373 So.2d 605 (1979)
Kenny R. BROWN et al., Plaintiffs-Appellees,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS et al., Defendant-Appellant.
No. 6961.
Court of Appeal of Louisiana, Third Circuit.
July 5, 1979.
Rehearing Denied August 15, 1979.
David K. Balfour, Baton Rouge, for defendant-appellant.
Broussard, Bolton & Halcomb by Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellee.
*606 Before FORET, CUTRER and SWIFT, JJ.
SWIFT, Judge.
This is a suit for damages arising out of a two car accident allegedly caused by a low shoulder of a state-maintained highway which had not been brought up to grade after the road surface was overlaid with one and one-half inches of asphalt. It was consolidated for trial and appeal with our No. 6960 entitled "Eugene A. Wilson, Jr., et al v. Louisiana Department of Highways", La.App., 373 So.2d 610. From a judgment in favor of the plaintiffs in both suits, the defendant, State of Louisiana, through the Department of Transportation and Development (formerly the Department of Highways), has appealed. We affirm and render separate decrees.
The plaintiffs in the present suit, Kenny R. Brown, Henderson Anderson, Toney Martin and Frank Jackson, III, were passengers in a vehicle being driven by Eugene A. Wilson, Jr. and owned by Rosa Lee Wilson. The latter two persons filed the other action. The second vehicle was driven by Mrs. Annie Mouton, but she is not a party to this litigation.
We quote with approval from his reasons for judgment the trial judge's recital of the relatively undisputed facts:
"On February 2, 1973, Eugene Wilson was driving a 1972 Plymouth automobile south on U.S. 167 between Winnfield and Dry Prong. Wilson, a student at Grambling University, was enroute to his home in Alexandria and was accompanied by Frank Jackson, Henderson Anderson, Kenny Brown and Toney Martin all of whom were students at Grambling. Wilson was driving between 45 and 50 miles an hour. The highway was smooth as the portion with which we are concerned had been recently overlaid. The overlay was done by a contractor whose contract provided that the Department of Highways would do the shoulder work necessitated by the overlay.
"The Department had accepted the overlay job on or about December 1, 1972, but had not performed the necessary work to raise the shoulders to the level of the overlay. As a result, there was a drop from the surface of the road to the shoulder which was stipulated to be at least 1½ inches.
"Construction signs erected when the construction was underway were still up at each end of the two mile overlay strip. Work had been completed and no work was being done on February 2, 1973. There were no signs warning of low shoulders.
"All plaintiffs testified that they suddenly noticed what `seemed like rough riding' on the right rear as though the tire had gone flat or had blown out. Wilson lifted his foot from the accelerator, slightly applied his brakes and began to pull his automobile to the shoulder of the highway. He was successful in getting one or both right wheels off the pavement when `the steering wheel locked.' The evidence shows the right wheel or wheels of the Wilson vehicle subsequently came back on the blacktop and the vehicle crossed the highway at an angle into the north bound lane where it was struck by a vehicle operated by Mrs. Annie Mouton."
The trial judge also found in regard to these disputed issues that at the time of the accident the shoulder was more than two inches lower than the asphalt surface; that this was a hazardous condition; that the Department was negligent in failing to eliminate the drop-off; and that it was a proximate cause of the accident for which the Department was legally responsible.
The legal responsibility of the Department as to highway accidents was generally stated by this court in LaBorde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974), writ denied, 303 So.2d 182 (La.1974) as follows:
"The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the *607 highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it."
Also see U. S. F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976) and Guin v. State Through Dept. of Highways, 360 So.2d 1185 (La.App. 3 Cir. 1978).
Included within the Department's duties is the maintenance of the shoulders of the highway in a reasonably safe condition. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979). Specifically, where a drop-off to a low shoulder results from asphalt overlaid on the road by the Department or its contractor the former has the duty to repair the defect or hazardous condition within a reasonable length of time. Brandon v. State, Through Dept. of Highways, 367 So.2d 137 (La.App. 2 Cir. 1979). In this connection the court said:
"What constitutes a reasonable time to complete construction and to eliminate construction defects depends upon the circumstances of each case and involves consideration of factors such as the extent of the project, emergencies, availability of materials and manpower, priorities of projects, safety and economic aspects of construction, the nature and degree of the hazard created, the ability to adequately warn, and other factors."
In the cases now before this court the Department has admitted it had actual knowledge of the condition of the shoulder at the scene when the overlay was accepted from the contractor slightly over two months before the accident occurred. Consequently, the issues presented on this appeal are: (1) Whether the drop-off was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver? (2) Whether a reasonable time had expired for the Department to eliminate the defect? (3) Whether the condition was a cause-in-fact of the accident?
(1) The defect.
No one actually measured the difference in the elevations of the road surface and its west shoulder. It was estimated by the state trooper who investigated the accident and two of the plaintiffs to be greater than two inches. However, all of them admitted it could be less. In view of such testimony and the stipulation of the parties, we cannot say the trial judge's determination that the drop-off exceeded two inches was manifestly in error.
The Department's "Maintenance Superintendent's Manual" states at Standard M4-12, "Raising shoulders must be done after any overlay". Also M4-2 it says that edge rut repairs "may be done on an inclement weather schedule ... let them get at least one inch deep before repairs, and catch them before they get about two inches deep".
Professor Joseph H. Barnwell, an engineer who was recognized by the trial judge as an expert in the field of accident reconstruction, testified that the elevation difference in this case was a hazardous condition which tended to cause a vehicle to turn to the right when its right wheel ran onto the shoulder. This would have a detrimental effect on the driver's ability to maintain control of the car, particularly in this instance where the vehicle's right rear tire had blown out.
Mr. Lacy Glascock, a Bituminous Research Engineer with the Department who was qualified as an expert in traffic engineering, said that a one and one-half inch difference in elevation between the surface and shoulder of the highway was "in the area of what I would call a hazardous situation", but not an undue hazardous condition that would demand any action that was not taken in this case.
Mr. Charles Andrews, a District Safety Inspector; but whose duties were primarily concerned with hazards to the Department's *608 personnel and equipment, testified he thought "Low Shoulders" signs should have been erected at this location, besides the existing "Road Under Construction" signs, as added protection to the motoring public. He reported this to the District Maintenance Engineer, Melvin Jackson, but such signs were not put up until after the accident.
Mr. Jackson said that this drop-off could constitute a safety hazard with other factors, such as attempting to cut back on the asphalt from the shoulder at an excessive speed. However, he could not see how anybody could have any problem with a one and one-half inch difference between the road surface and shoulder if he drove properly within the limit of 45 miles per hour and there were no other circumstances present affecting the driver's ability to control the car. Jackson also contended that Section M4 of the maintenance manual did not apply to this situation, because its provisions generally dealt with routine maintenance rather than a betterment program or new construction. However, he admitted this was not necessarily the case as to the direction to bring the shoulders up after any overlay.
If more than a one inch drop-off to the shoulder of a highway is a condition or defect that should be eliminated for the protection of the motoring public in the course of routine maintenance, we are unable to see why the same reason would not require its elimination within a reasonable time after a surface overlay in a betterment program.
From our review of the record, we conclude that the preponderance of evidence is to the effect that this drop-off was obviously dangerous to a reasonable and prudent driver.
(2) The time required to repair the defect.
Mr. Jackson testified that he was aware of the completion of the one and one-half inch overlay on or about December 1, 1972, and that the shoulders were below the surface of the highway. It would take 15 or 20 days to raise them. Jackson acknowledged that it was within his power to direct the highways crews to restore the shoulders, but he did not plan to do so until spring. His reason was that the shoulders of the roads in Grant Parish were solid and were some of the better ones in his district. He did not want to disrupt them because of the possibility of inclement weather and also the crews were busy doing other work of higher priority. However, no other evidence was submitted by the Department to establish the urgency of the other work or the reasonableness of Jackson's decision not to raise the road shoulders until spring. Like the trial judge, we believe the Department was negligent in delaying for more than 60 days compliance with its own standards of raising the shoulders of the highways after an overlay, particularly since the drop-off in this case exceeded two inches.
(3) The cause-in-fact of the accident.
In order to establish liability on the part of the Department, plaintiffs must not only show that the defendant's conduct was tortious, but also that the acts complained of were a cause-in-fact of their injuries. To be a cause-in-fact of plaintiffs' harm, the negligent conduct must have been a substantial factor in causing the accident. Such conduct need not be the sole cause, but it has to be a necessary ingredient of the resulting injuries and a direct relationship between the two is required. LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978); Rue v. State, Department of Highways, supra.
Professor Barnwell gave his detailed opinion as to what happened when Wilson's right rear tire blew out, including the contact or "lock-up" of the right front tire with the edge of the asphalt in the driver's unsuccessful attempt to control the vehicle. He testified that the drop-off was a definite factor in the subsequent maneuvers of the vehicle after the blowout and became the factor in preventing the driver from controlling the car. Although Mr. Barnwell acknowledged the possibility of a collision with the Mouton vehicle if the shoulder had been level with the paved surface, he believed *609 in such case the vehicle more probably would have remained on the right shoulder or on the right side of the road.
Mr. Glascock tended to agree with Professor Barnwell and recognized the drop-off was a factor in the occurrence in the accident. However, he ranked it secondary to the blown out tire and the capability of the driver to control his vehicle.
The trial judge concluded that the low shoulder was a cause-in-fact of the accident. He found that Wilson had his vehicle under full control until his right wheel or wheels dropped off the edge of the pavement, where he became unable to steer the vehicle and the collision resulted.
Factual causation is a question that is to be resolved by the trier of fact. Anding v. Southwestern Ins. Co., 358 So.2d 690 (La.App. 3 Cir. 1978). We cannot say that the judge was clearly wrong in this respect under the evidence presented. Since the Department has not pleaded any affirmative defense, it is liable to all of the plaintiffs in these cases.
In view of our conclusion as to the Department's negligence in failing to raise the shoulder of the highway, it is unnecessary for us to consider the plaintiffs' contention that the defendant was also negligent in failing to post "Low Shoulders" signs timely.
None of the parties have specified or mentioned in brief or oral argument any error in the trial judge's awards of damages to the plaintiffs. However, they appear to us to be reasonable.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant-appellant.
FORET, J., dissents with written reasons.
FORET, Judge, dissenting.
I find that I am unable to agree with the majority.
I simply cannot find that the Department of Transportation was negligent in failing to raise the level of the shoulders within sixty days after the overlay was completed. Highway Engineer Melvin Jackson testified that the Department of Transportation intended to raise the shoulders; however, to attempt to do so in the months of December, January, or February, when inclement weather usually prevails, could create a worse situation than merely leaving the shoulders as they were for the time being (until spring), because the said shoulders were in such excellent condition otherwise. In my view, this is a very reasonable, and plausible explanation. Further, he testified that the crews to do this work were occupied on other higher priority projects; another reasonable explanation.
Additionally, I cannot bring myself to believe that a one-and-a-half to a two-inch drop of the shoulder created a hazardous condition, such as to make the Department of Transportation liable for any accident which may be even remotely connected with the drop-off. Anyone who drives the highways of Louisiana, including police jury roads and streets, municipal roads and streets, etc. can see that drop-offs and ruts are extremely common. To make the State Highway Department, police juries, and municipalities strictly liable for those conditions seems to me to place a prohibitive financial burden on these governmental units. Such a result is particularly ominous when one considers the recent Louisiana Supreme Court decision in Rue v. State of La., Dept. of Highways, 372 So.2d 1197 (La., 1979). In Rue, the Supreme Court has imposed strict liability and has made the State, police juries and municipalities, insurers against any damage which can be remotely connected to a defect in the shoulder, regardless of whether the driver of the vehicle intentionally, or unintentionally, or through inadvertence (plain negligence), drove onto the shoulder.
As to plaintiff's argument that the State had placed no "low shoulder" signs to warn Eugene Wilson of the low shoulder, an issue which the majority did not reach, I would simply point out that Eugene Wilson traveled frequently between Grambling and Alexandria, and he testified that he knew that *610 the road was under construction. Further, the drop-off was as visible to Wilson as it was to the Highway Department and he certainly should have seen it, and no doubt did see it.
For the foregoing reasons, I respectfully dissent.