CUTRER, Judge.
This suit was consolidated in the trial court and on appeal with the case of Lavergne v. Department of Transportation and Development et al., 381 So.2d 528 (La.App. 3rd Cir. 1979). Separate judgments were rendered in the trial court and separate judgments are rendered on this date in each case on appeal.
These consolidated suits are for damages arising out of a two vehicle accident in which Florentine Sinitiere and Cyrillia Sini-tiere Henry were killed, and Gerald W. Lavergne was injured.
The basic facts are set forth by the trial judge in his written reasons as follows:
*523 “On May 19, 1977, at approximately 3:00 P. M., CYRILLIA HENRY was driving a 1974 Monte Carlo in a westerly direction on Louisiana Highway 182 near its intersection with Captain Cade Road in St. Martin Parish, Louisiana. FLORENTINE SINITIERE, her guest passenger, was in the right front passenger seat. At the same time GERALD WAYNE LAVERGNE, while acting within the course and scope of his employment with MICROFILM CONSULTANTS, INC., was operating a 1968 Ford van in an easterly direction on Louisiana Highway 182. As LAVERGNE rounded a curve in the highway, he caused the right front and back wheels of the van to veer off of the travel portion of the roadway onto the shoulder of the highway. In an attempt to maneuver the van back onto the travel portion of the highway, LAVERGNE lost control of his vehicle. He crossed the center line of the highway directly into the pathway of the oncoming HENRY vehicle. A headon collision resulted — the left front of the LAV-ERGNE van hit the left front of the HENRY vehicle. Both vehicles came to rest in the westbound lane, the area of impact. MRS. HENRY was apparently killed immediately; MRS. SINITIERE was severely injured and died approximately two hours after the accident.

“Louisiana Highway 182 is an undivided blacktopped highway approximately 23 feet 10 inches wide. The lanes of traffic are marked by a white divided center line and are delineated from the adjoining 8 foot shoulders by a 4 inch wide reflectorized line. There was a 3V2-4 inch drop from the travel portion of the highway to the shoulder on the eastbound shoulder side of the highway at the site of the accident. This 3V2-4 inch drop, which existed throughout the curve of the highway, ran from 30 to 40 feet (in length). On the day of the accident, the weather was clear and the road was dry. There were no ‘low shoulder’ warning signs in the area."

Suit was filed by Albert Sinitiere, Jr., son of Florentine Sinitiere, and by Byran Henry, as surviving spouse of Cyrillia Sinitiere Henry, and as tutor of their minor son, Steven C. Henry. Suit was also filed by George Seiber as tutor for the minor children of the former marriage between Seiber and Cyrillia Sinitiere Henry. These children are Donnie, Troy and Derek Seiber.
Defendants were Gerald W. Lavergne, Microfilm Consultants, Inc. (Microfilm), Lavergne’s employer, and the State of Louisiana through the Department of Transportation and Development (Department). An intervention was filed by State Farm Mutual Automobile Insurance Company (State Farm), as subrogee, to recover payments made to Albert Sinitiere, Jr. and Bryan Henry under the medical and/or collision coverage of policies issued by State Farm to these persons.
A third party demand was filed by Lav-ergne against Southeastern Fidelity Insurance Company (Southeastern), his alleged insurer, the Department, and the heirs of decedents.
Lavergne also filed suit (our Docket Number 7425) against the Department for personal injuries he received in the accident.
The trial court in this suit (Docket Number 7424) rendered judgment in favor of plaintiffs and intervenor against defendants, Lavergne, Microfilm, and the Department, in solido.
The trial court also ordered reciprocal contribution as between the defendants, Department, for one-half of the judgment and Lavergne and his employer, Microfilm, for one-half thereof. The trial court also rendered judgment on Lavergne’s third party demand in favor of Lavergne and against Southeastern, third party defendant, in the amount of $10,000.00.
In the companion case (Docket Number 7425), judgment was rendered in favor of the Department and against Lavergne, dismissing Lavergne’s suit.
The Department appealed from the judgment rendered against it in Docket Number 7424. Lavergne appealed in both suits.
*524 The issues presented for review are as follows:
(1) Whether the Department was negligent in its maintenance of the shoulders of the highway;
(2) Whether Lavergne was negligent in the operation of the Microfilm vehicle; and
(3) Whether the awards to the plaintiffs are excessive.
We will discuss the issues in the order enumerated.
NEGLIGENCE OF THE DEPARTMENT
The duties of the Department and its responsibilities to the public using the highways was set forth by this court in the recent case of Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App. 3rd Cir. 1979), as follows:

“The legal responsibility of the Department as to highway accidents was generally stated by this court in LaBorde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3 Cir. 1974), writ denied, 303 So.2d 182 (La.1974) as follows:

‘The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver; and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it’

Also, see U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780 (La.1976) and Guin v. State Through Dept. of Highways, 360 So.2d 1185 (La.App. 3 Cir. 1978).

“Included within the Department’s duties is the maintenance of the shoulders of the highway in a reasonably safe condition. Rue v. State, [Through] Dept. of Highways, 372 So.2d 1197 (La.1979).

The Department contends that the plaintiffs failed to satisfy requirement number (2) of the above, that is, it was not proved that the Department had actual or constructive notice of the existence of the defect and failed to correct same within a reasonable time. The resolution of this issue, being a question of fact, depends upon the existing facts and circumstances of each case. The trial court, in its reasons for judgment, found that:
". . . the Department of Transportation was negligent in failing to correct the 3V2 to 4 inch drop from Louisiana Highway 182 to the shoulder despite its actual and constructive knowledge of the defect. ”
The court further stated that:

“Louisiana Highway 182 was inspected 3 or 4 days prior to the accident. Witnesses testified that the drop off had existed for some time prior to the accident'. Mr. Whitney Lasseigne, St. Martin Parish Highway Superintendent [for the Department of Transportation] testified that a 2 inch drop from the highway to the shoulder is dangerous. The guidelines followed by his department, prepared by the Department of Highways, states that more than a one (1) inch drop should not be allowed."

An examination of the record reveals evidence which fully supports the trial court’s conclusion that the Department had actual or constructive notice of the defect in the shoulder and failed to repair same within a reasonable time. Millard Segura, who worked at a nearby golf course, heard the collision of the vehicles and went to the scene of the accident. He testified that he saw the rut or drop-off alongside the hard surface when he arrived at the scene. He further stated that the defective condition had existed for some time before the accident. He wasn’t sure for how long, however.
*525 Sidney Hebert traveled the road twice a day going to and from work. He arrived at the scene of the accident soon after its occurrence and noticed the rut or drop-off alongside the hard surfaced road. Hebert had observed the existence of this condition on other occasions, stating that the condition had existed from four to eight weeks.
Whitney Lasseigne, Superintendent of the Department for St. Martin Parish, testified that his records indicated that on May 16, 1977, three days prior to the accident, the shoulder in the area of the accident was inspected by him and he noted that it needed “blading.” By “blading” he explained that the grader machine would be used to smooth out rough spots and depressions. Lasseigne stated that he didn’t send a grader to the area immediately due to the shortage of personnel and equipment. He didn’t think that [1] the situation was dangerous enough to require emergency action. In the event of an emergency, Lasseigne stated that the regular work schedule would be interrupted and the dangerous condition would be repaired. Lasseigne further testified that he considered a shoulder drop-off to be dangerous if the drop-off was more than 1 to 2 inches. The Maintenance Superintendent’s Manual, issued by the Department to guide their superintendents, states that:
“ . . . anytime a shoulder is more than an inch low (or less in some cases) . it should be reshaped.”
The drop-off in this case was from S[1]/» to 4 inches which extended from the area of the accident along the curve to the intersection of Captain Cade Road. This was the testimony of the investigating officers.
Our review of the record leads us to conclude that the trial court was not clearly wrong in its determination that the Department had actual or constructive notice of the hazardous shoulder condition and that its failure to correct the hazard was negligence.
Further, this negligence was a cause-in-fact of the accident. Had the Department not been negligent in its failure to maintain the shoulder, the accident would not have occurred. The duty of the Department to maintain reasonably safe shoulders encompasses the risk that a driver, who finds himself on the shoulder and who attempts to re-enter the paved portion of the roadway, will lose control of the vehicle because of the unsafe condition created by a low shoulder. Thus, the violation of the duty was a legal cause of the accident.
The trial court correctly determined that the Department was negligent, which negligence was a legal cause of the accident.
LAVERGNE’S NEGLIGENCE
The trial court found that Lavergne was guilty of contributory negligence (which was a legal cause of the accident) in that he allowed his vehicle to inadvertently leave the improved portion of the roadway. The court relied on the rule set forth in Hopkins v. Department of Highways, 167 So.2d 441 (La.App. 1st Cir. 1964), writs ref’d, 246 La. 885, 168 So.2d 268 (1964), that unless there is an emergency over which a motorist has no control, and which is not of his own making:
“ . . . it constitutes negligence for a driver to permit Tiis vehicle to leave the improved portion of a road or highway without reducing his speed and otherwise taking precautions to insure his retention of control thereof in the event he should encounter some unforseen defect on the shoulder of the thoroughfare.”
The application of the principles of Hopkins by the trial court was error. Hopkins was overruled in the recent case of Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). We note, however, that the trial judge did not have the Rue case available to him at the time the judgments herein were rendered.[1]
*526 In Rue, the driver was negotiating a curve to the left when she inadvertently allowed her vehicle to drift off the paved portion of the highway. The right wheels struck a rut adjacent to the edge of the pavement upon her attempt to get back upon the highway, causing the driver to lose control of the vehicle which went across the highway where it flipped over several times before coming to rest in a field. The driver was driving within the speed limit at the time of the accident.
The Supreme Court, reversing the Court of Appeal (which had held the driver negligent under the doctrine of Hopkins), held as follows:
“Under a simple ‘but-for’ analysis the accident would not have occurred had either the Highway Department not been negligent in failing to maintain the shoulder or the plaintiff not been negligent (and for present purposes we assume her inadvertent meandering was negligence) in moving the vehicle onto the shoulder. But this does not conclude the inquiry. Focusing on plaintiff’s ‘substandard’ conduct the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff’s failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely, the Highway Department’s duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including a simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder.

We conclude that plaintiff’s conduct if indeed it was substandard is no bar to her recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder. We therefore expressly overrule Hopkins v. Department of Highways, supra.”

The facts in this case are strikingly similar to those found in Rue. Lavergne was negotiating a gradual curve to his left when he inadvertently allowed the van to leave the blacktop surface, dropping the two right wheels onto the shoulder where he struck a rut or drop-off of 3V2 to 4 inches deep. Upon his attempt to get back upon the blacktop, his right front wheel struck the edge of the hard surface, causing Lav-ergne to lose control of the van he was operating. The van went across the highway where it struck the plaintiff’s automobile. Under the doctrine of Rue, Lav-ergne’s conduct, if it was substandard, is no bar to his recovery of damages occasioned chiefly because the Department negligently failed to maintain a safe highway shoulder.
The Department contends that Lavergne was negligent by not turning his wheel at a higher angle as he attempted to get back upon the blacktop. Lavergne testified that after he went upon the shoulder, he took his foot off the accelerator and pressed his brake lightly. He then attempted to turn gradually onto the blacktop when the vehicle suddenly went upon and across the blacktop. As we consider the testimony of the witnesses, including the traffic safety experts, we conclude that Lavergne’s attempt to get back upon the blacktop was done in a reasonable manner, and his action was not negligent under the circumstances. Under the Rue doctrine, even if such a re-entry could be considered substandard, Lavergne would not be barred from a recovery of damages occasioned chiefly because the Department failed to maintain a safe highway shoulder. We hold that Lav-ergne was free of negligence in the operation of the vehicle he was operating.
We will therefore reverse the judgment of the trial court insofar as it imposes any liability upon Lavergne either as a defend *527 ant or third party defendant in this suit (Docket Number 7424).
DAMAGES
The Department contends that the damages awarded to the plaintiffs are excessive. No arguments were presented in brief on this issue. The trial court made the following awards:

“To ALBERT SINITIERE, JR., for mental anguish and grief and loss of love, affection and companionship, the sum of TWENTY FIVE THOUSAND AND NO/lOO ($25,000.00) DOLLARS.

“For pain and suffering of MRS. SINI-TIERE, FIVE THOUSAND AND NO/lOO ($5,000.00) DOLLARS.

“For special damages:

David Ambulance Service, Inc. $ 80.00

Dr. E. Weeks Dauterive 500.00

Dauterive Hospital, Inc. 955.30

Funeral Expenses 1,145.27

“To STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as intervenor, to be paid from the above sums awarded to ALBERT SINITIERE, JR., the sum of TWO THOUSAND THREE HUNDRED THREE AND 7/100 ($2,303.07).

“To BRYAN HENRY, for mental anguish and grief and loss of love, affection and companionship, the sum of FIFTY THOUSAND AND NO/lOO ($50,000.00) DOLLARS.

“For special damages:

Funeral Expenses $3,692.12

Loss of Family Vehicle 3,650.00

“To STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as intervenor to be paid from the above sums awarded to BRYAN HENRY, the sum of FIVE THOUSAND SIX HUNDRED FIFTY AND NO/lOO ($5,650.00) DOLLARS.

“TO BRYAN HENRY, as natural tutor of STEVEN C. HENRY, for loss of love, companionship, and guidance, the sum of FORTY THOUSAND AND NO/lOO ($40,000.00) DOLLARS.

“To GEORGE SEIBER, as natural tutor of his minor children DONNIE JAMES SEIBER, the sum of FIFTEEN THOUSAND AND NO/lOO ($15,000.00) DOLLARS.

“TROY JOHN SEIBER, the sum of FIFTEEN THOUSAND AND NO/lOO ($15,000.00) DOLLARS.

“DEREK JAMES SEIBER, the sum of TWENTY THOUSAND AND NO/lOO ($20,000.00) DOLLARS.”

An examination of the record clearly indicates that the awards are not excessive, but are within the much discretion of the trial judge. We find no manifest error in these awards.
For the assigned reasons, the judgment of the trial court is reversed and the suit (Docket Number 7424) is dismissed insofar as it imposes liability on Gerald W. Lav-ergne as a defendant, and also as a third party defendant. The judgment is affirmed in all other respects. Costs of this appeal are assessed to the Department of Transportation and Development.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
FORET, J., concurs and assigns written reasons.
DOUCET, J., concurs for reasons assigned by FORET, J.

. We note that reasons for the judgment in this case were signed January 3, 1979, with the judgments being signed May 8, 1979 (Sinitiere-Henry, Number 7424), and July 13, 1979 (Lav-ergne, Number 7425). Rue appeared in the advance sheets dated August 23, 1979, of the Southern Reporter Second (the decision was handed down on June 25, 1979, with rehearing denied on July 27, 1979). Rue was thus not available to the trial judge when he wrote his reasons and signed the judgments.