398 So.2d 88 (1981)
Richard Brady McDANIEL, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 8179.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
Rehearing Denied May 28, 1981.
*89 William J. Doran, Jr., Baton Rouge, for defendant-appellant.
Felix A. DeJean, III, and Mel Credeur, Opelousas, for plaintiff-appellee.
John T. Bennett, Marksville, for plaintiff-appellee-appellant.
McLure & McLure, John C. Pickels, Alexandria, for plaintiff-appellee-appellant.
Before GUIDRY, SWIFT and LABORDE, JJ.
LABORDE, Judge.
This case is one of two tort actions based upon common facts and for that reason consolidated for trial. The cases remain consolidated on appeal and we this day render a separate decision in the companion case entitled Wagley v. McDaniel, 398 So.2d 93 (La.App. 3rd Cir. 1981).
Plaintiffs, Richard Brady McDaniel and David Randal Wagley filed separate tort actions against the Louisiana Department of Transportation and Development (Department) for damages each sustained as a result of a head-on collision allegedly caused by the negligence of the Department.[1] The trial court found that the Department was negligent, which negligence was the sole cause of the accident. The court found Richard Brady McDaniel free of negligence. Accordingly, judgment was rendered in favor of the plaintiffs in both suits. In the suit which bears our docket number 8179, Richard McDaniel was awarded the total sum of $233,497.60. In the companion matter bearing our docket number 8178, David Wagley was awarded the total sum of $44,057.72.
The Department appeals the lower court decisions in both suits. Plaintiffs, McDaniel and Wagley, answer requesting an increase in the trial court's awards. We affirm both judgments and both awards.
The issues presented are as follows:
(1) Whether the Department should be held liable.
(2) Whether McDaniel was contributorily negligent; and
(3) Whether each damage award was proper.

FACTS
On August 6, 1980, at approximately dusk or shortly thereafter, Richard McDaniel was driving his Triumph TR7 on Louisiana Highway 29, proceeding from Cottonport toward Evergreen, Louisiana. David Wagley was also traveling the same highway but was proceeding in the opposite direction. Highway 29 is a two lane highway with many curves along its course. It had been undergoing reconstruction which involved resurfacing work. According to the record, the riding surface of the highway had been overlayed approximately four months earlier and, at the time of the accident, the shoulders had not been brought up to the level of the traveling surface. As a result, a drop-off of anywhere from four to ten inches existed on each side of the road surface.
While proceeding in opposite directions, both the McDaniel and Wagley vehicles began entering the same "S" curve at about the same time, each from his respective direction. McDaniel testified that as he began negotiating the curve, he faced the lights of two on-coming vehicles, one of which was being driven by Wagley.
*90 McDaniel testified that the cars appeared to be heading right at him. Due to this illusion, McDaniel steered his vehicle to the right causing his right wheels to drop off the travel portion of the highway and onto the shoulder. He subsequently lost control of his car causing it to veer across the highway, graze one of the two on-coming vehicles and collide head-on with the other which was the Wagley vehicle. Both McDaniel and Wagley were seriously injured.

LIABILITY OF THE DEPARTMENT
The general duties of the Department toward motorists are set forth in the case of Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980), where the Supreme Court held as follows:
"It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time."
With the Department's duty in mind, we will review the facts surrounding the accident.
The record supports that the overlay was completed approximately four months prior to the date of the accident. At the site of the accident, there existed a four to ten inch drop-off presenting a hazardous condition which the Department knew or should have known of yet nonetheless allowed to exist for approximately four months. This court has held that a drop-off of more than two inches created a dangerous condition. Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App. 3rd Cir. 1979) writ denied, 376 So.2d 1269 (1979).
As to whether such negligence of the Department is a cause in fact of the accident is answered in the Sinitiere case, supra, where the Supreme Court held:
"Negligence is only actionable where it is both a cause in fact of the injury and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973). Using a `but-for' test to determine cause in fact clearly results in a finding that the accident would not have resulted had the road shoulder been substantially even with the travel portion of the road...."
Applying the "but for" test to the circumstances here, we hold that the negligence of the Department was a cause in fact of the accident. Further, there is a substantial relationship between the Department's failure to correct the low shoulder and the type of risk encountered by both McDaniel and Wagley, namely an automobile accident.

NEGLIGENCE OF RICHARD BRADY McDANIEL
The Department cites the recent Supreme Court case, among others, of Sinitiere v. Lavergne, supra, in support of its contention that McDaniel was contributorily negligent and should be barred from any recovery against the Department. The Department also contends that McDaniel's contributory negligence bars Wagley from recovering his entire judgment against the Department.
A motorist owes the duty of reasonable care which includes the additional duties of keeping his vehicle under control and maintaining a proper lookout for hazards. Sinitiere v. Lavergne, supra. The court in Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), stated that a motorist's duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. However, the Court in the Sinitiere case stated that this language *91 in Rue "does not establish the highway shoulder as a `zone of recovery' for every straying motorist." The Supreme Court's point is well-taken. However, we do not believe the Court intended to leap to the other extreme and automatically deny recovery to every motorist who strays onto the shoulder and thereafter does not accomplish a safe re-entry back onto the roadway's riding surface. Instead, we feel it our duty to, on a case-by-case basis, focus on the facts and circumstances presented in each case to determine whether the straying motorist breached his duty to drive reasonably.
Under the facts and circumstances here presented, we hold that McDaniel was free from negligence in straying from the highway and in his actions taken once he had slipped off the riding surface.
The accident occurred in the early evening, just as it was beginning to grow dark. McDaniel testified that he was traveling about fifty miles an hour along the highway and was having no difficulty with his car. As he began going around an "S" curve, he faced the lights of two on-coming cars which, due to an illusion, appeared to be encroaching on his lane of travel. To compensate, McDaniel steered his vehicle to the right to allow more room for these on-coming vehicles. As he did, his right tires slipped off of the pavement and onto the low shoulder.
McDaniel testified that while he was aware of the existing road construction, he did not know how dangerously low the shoulder was. He did not recall seeing any low shoulder signs, plastic cones, flashing lights, or other roadway devices warning of the roadway's dangerous shoulder. Nor were there edge markings or lines or center stripes or reflectors present on the roadway's riding surface to guide him in gaining a proper perspective in relation to the on-coming vehicles.
Based on these facts, McDaniel's straying onto the shoulder does not constitute a breach of his duty to drive in a safe and reasonable manner. Sinitiere v. Lavergne, supra; Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976) writ denied, 342 So.2d 218 (1977).
We now address whether McDaniel's actions subsequent to his leaving the roadway amounted to a breach of a duty owed.
We begin by noting that when McDaniel's tires slipped off of the roadway, he did not have the advantage of daylight to illuminate the way before him. Instead it was dusk, almost dark. In addition, the headlights of the approaching vehicles, which only seconds before he believed were coming straight at him, were still beaming towards himadding to his difficulty in seeing the way ahead of him. Also, and very important we think, McDaniel was not traveling along a straightaway when his tires slipped off of the pavement. Instead, he was in the process of negotiating an "S" curve and was traveling on the curve's outside moving to its left. The curve itself, along with its steep pavement-shoulder drop-off, also had a steep shoulder-ditch drop-off.
In addition to all of this, the record contains conflicting evidence as to whether McDaniel, after slipping off of the roadway, ever again regained sufficient control of his vehicle such that a safe re-entry maneuver could be attempted. For this reason, we discount the testimony of the Department's expert who testified that a straying motorist has a duty to slow his vehicle down to a speed at which a re-entry onto the riding surface can be safely accomplished as it presumes the motorist has control of his vehicle, a fact not supported by the record.
Under the facts and circumstances outlined above, we cannot say that the trial court was clearly or manifestly erroneous in concluding that McDaniel was free from negligence. This conclusion will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

QUANTUM
Plaintiffs Richard McDaniel and David Wagley, answered the Department's appeal requesting an increase in the award of damages.
*92 The record indicates that McDaniel was trapped in his vehicle following the accident. His left knee was crushed and his right knee was pinned with a rod of steel that had to be forcibly removed through his knee to free him. The hospital emergency records show his major injuries as follows: (1) intra-articular fracture of the supracondylar level of the left femur; (2) bi-malleolar fracture of the left ankle; (3) severe laceration with avulsion fracture of the medial femoral condyle of the right knee; (4) laceration of the dorsum of the right ring and little fingers at the PIP joint; (5) deep laceration of the left knee; (6) multiple fractures of the mandible; and (7) fracture of the right calcaneus. These injuries and attendant complications have required multiple hospitalizations and surgical procedures and will require further surgery. They also render McDaniel permanently and almost totally disabled. The trial court awarded McDaniel $133,497.60 in special damages and $100,000.00 in general damages.
The record also indicates that as a result of the accident, Wagley suffered a collapsed right lung as well as a severely bruised rib area. As a result, Wagley has a painful, permanent breathing impairment. The trial court awarded Wagley $4,057.72 in special damages and $40,000.00 in general damages.
It is well settled that before a Court of Appeal can disturb the quantum award made by the trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). After a careful review of the record, we conclude that the lower court is not guilty of such abuse in making either award.
For the above and foregoing reasons, the judgment appealed from is affirmed. Costs of this appeal are assessed against the appellant, the State of Louisiana, Department of Transportation and Development in the amount of $350.50.
AFFIRMED.
GUIDRY, J., concurs and assigns reasons.
SWIFT, J., dissents and assigns reasons.
GUIDRY, Judge, concurring.
I fully concur in the majority opinion in this case but consider a short written concurrence necessary in order to explain my decision in this case in light of the recent decision of this court in Knotts v. State of Louisiana, Department of Highways, 395 So.2d 419 (1981). In Knotts, supra, a decision in which I participated as a member of the panel, our court determined that the driver of a motor vehicle who inadvertently drove onto the shoulder of the road in a construction area was negligent in leaving the highway. In my view the factual circumstances of this case are clearly distinguishable from those present in Knotts. In Knotts, the accident occurred in broad day light. The accident in this case happened at night. In Knotts, the driver was fully aware of the dangerous condition of the shoulder and the severe extent of the shoulder drop-off. In the instant case, McDaniel, although aware that he was driving in a construction area, he did not know that the drop-off varied from four inches to ten inches. In Knotts, the driver of the vehicle complained of no difficulty in discerning the extent of his lane of travel in relation to the opposite lane of travel or the shoulder of the road. In the instant case because of darkness, the pitch-black surface of the roadway, the lack of any edge markings and the headlights of oncoming vehicles, McDaniels was unable to gain a proper perspective of his lane of travel in relation to the opposing lane of travel and the shoulder area.[1] In Knotts, the accident happened on *93 a straightaway and the driver was faced with no actual or seeming emergency. In the instant case McDaniel strayed onto the shoulder as he proceeded through an "S" curve when, because of an illusion, on-coming cars appeared to be encroaching on his lane of travel, a factual situation similar to that presented in Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), writ denied, 342 So.2d 218 (La.1977). In Knotts, the record clearly revealed that Knotts maintained control of his vehicle after straying onto the shoulder and only lost control when he attempted a re-entry at too sharp an angle and at too great a speed. In the instant case, in my view, the preponderance of the evidence shows that McDaniel lost driver control as soon as the right wheels of his vehicle dropped off of the travel portion of the highway. In this latter connection I consider the testimony of the investigating state trooper to the effect that the McDaniel car did not travel down the shoulder but "came right back on" to be most probative. (Tr. pg. 98)
For the above reasons I fully concur that the record in this case supports the trial court's conclusion that McDaniel was not negligent when he inadvertently drove his vehicle onto the shoulder of the road in a known construction area. I likewise fully concur with the majority opinion in its treatment of the other issues presented on this appeal.
SWIFT, Judge, dissenting.
I respectfully dissent as I am convinced that plaintiff, Richard D. McDaniel, was guilty of contributory negligence and thus is barred from recovery. Sinitiere v. Lavergne, 391 So.2d 281 (La.1980).
NOTES
[1] David R. Wagley originally filed suit against McDaniel and his insurer as well as his own under-insurer. The Department was later added as a defendant through a supplemental and amending petition. Prior to trial, Wagley settled with and released all defendants except the Department against which all rights were reserved.
[1] Although the opinion in this case indicates the lack of center striping on Louisiana Highway 29 at the time of accident, the record does reflect that the center line was designated by the presence of temporary center line tape tabs spaced 20 to 30 yards apart. However, in my opinion, the presence of these temporary tape tabs, spaced as they were, was not sufficient to allow McDaniel a proper perspective of his lane of travel in relation to the opposing lane of travel and the shoulder of the road.