403 So.2d 109 (1981)
Steven Lee EDWARDS, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, et al., Defendants-Appellants.
No. 8334.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1981.
Rehearing Denied September 22, 1981.
*110 Gold, Little, Simon, Weems & Bruser, John F. Simon, Alexandria, for defendants-appellants.
John W. King, Baton Rouge, Monty L. Doggett, Natchitoches, for plaintiff-appellee.
Before CULPEPPER, STOKER and LABORDE, JJ.
LABORDE, Judge.
This is a tort suit arising from a one-car accident in which Steven Lee Edwards was left paralyzed from his chest down. The accident occurred on Louisiana Highway 117, which was undergoing reconstruction by K&M Construction Co., Inc. as contractor for the State of Louisiana, Department of Transportation and Development. The incident began when Edwards allowed the right wheels of his vehicle to drop off the road surface onto the shoulder. He lost control of his car as he attempted to re-enter the highway, causing the accident and his resulting injuries. There was a three inch drop-off from the road surface to the shoulder.
Edwards filed suit against the State of Louisiana, Department of Transportation and Development (Department), K&M Construction Co., Inc. (K&M), the contractor engaged in the reconstruction of the highway and Bituminous Casualty Corporation (Bituminous), the liability insurer of K&M. The Department filed third party demands against K&M and Bituminous, seeking indemnity or contribution toward any amount that may be awarded to Edwards against *111 the Department. K&M and Bituminous filed third party demands against the Department seeking the same.
The trial court found that K&M and the Department were negligent, which negligence was a cause in fact of the accident. The trial court further found that Edwards was driving in excess of 55 miles per hour and that his driving was "substandard under the circumstances." However, the court went on to hold that Edwards' substandard conduct did not preclude his recovery and rendered judgment against defendants in the sum of $450,000 as general damages and in the sum of $46,483.40 in special damages. The third party demands were denied.
The Department and K&M appeal and Edwards answers the appeal seeking an increase in the amount of the award.
The issues presented by the assignments of error are as follows:
(1) Whether the Department was negligent;
(2) Whether K&M was negligent;
(3) Whether Steven Edwards was negligent and, if so, whether such negligence should bar his recovery;
(4) Whether the defendants were strictly liable under Civil Code Article 2317; and
(5) Whether the general damage award was excessive or inadequate.

FACTS
On July 17, 1978, at approximately 8:15 P.M., Steven Edwards was driving his 1974 Audi automobile in a southerly direction on Highway 117 and in particular, a stretch of that highway running between Provencal and Bellwood in Natchitoches Parish, Louisiana. It was approaching dusk on a clear, dry day. Highway 117 is a two lane highway that was undergoing reconstruction. At the point of the accident, and for several miles north and south of the accident site, the shoulders of the highway had not yet been raised to the level of the new asphalt overlay, and there was a drop-off from the riding surface to the shoulder of approximately three inches.
As Edwards was driving his vehicle in a southerly direction he allowed the right wheels of his vehicle to go off the asphalt and onto the shoulder at a point where the highway made a gradual curve to his left. He subsequently attempted to re-enter the highway and, upon doing so, lost control of his car causing it to skid sideways across the highway for about 170 feet, run off the left side of the road and continue on for 120 feet before coming to a rest after having turned over at least once. There were no witnesses to this single car accident other than the driver, Edwards. Edwards was seriously injured in the accident and has no recollection of the events just prior to or right after the accident due to traumatic amnesia regarding how the accident happened. Edwards received multiple injuries. His spine was fractured at T 4-5 vertebra resulting in irreversible paraplegia. He is paralyzed from his chest downward.

NEGLIGENCE OF THE DEPARTMENT
The general duties of the Department toward the traveling public are set forth in the recent case of Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) where the Supreme Court held as follows:
"It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.3
Since road shoulders are only designed for temporary use when a motorist finds himself off the roadway, the Department's duty of care is generally discharged at a level of construction and maintenance less than that required for the primary road surface. However, an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other."
*112 With these principles in mind, we will examine the facts as they existed at the time of the accident.
The record shows that the surface overlay work was completed by May 10, 1978, and that the resurfacing resulted in a three inch drop-off to the shoulder on each side of the highway. The shoulder was not raised until sometime after the July 17, 1978, accident, over two months later.
The trial court found that the Department was negligent because it was aware of the patently or obviously dangerous drop-off from the blacktop to the shoulder of the highway yet failed to correct it within a reasonable time which was a cause in fact of Edwards' accident. A review of the record leads this court to the conclusion that the lower court was not manifestly erroneous in its conclusion. See Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La. App. 3rd Cir. 1979), writ den., 376 So.2d 1269 (1979); Brandon v. State, Through Dept. of Highways, 367 So.2d 137 (La.App. 2nd Cir. 1979), writs ref'd, 369 So.2d 141 (1979); Sinitiere v. Lavergne, supra. On appeal therefore, we are without power to disturb this finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

NEGLIGENCE OF K&M
The contractor, K&M, argues it should not be held to share responsibility with the Department.
The record shows that the Department contracted with K&M to reconstruct the highway in question which included the shoulders. Under the contract K&M had 120 working days to complete the project. In addition, the Department required that the shoulder material meet certain rigid specifications before it could be used.
The diaries in evidence show that K&M began putting shoulder material on the 61st day of the contract. The Department began its testing and found that the materials did not meet the requisite specifications. K&M tried, with the materials it had on hand, to meet the specifications but failed to do so. As a result, the Department shut down the contractor's work stating "Contractor shut down until samples of shoulder gravel approved."
K&M argues that its efforts in trying to meet the specifications and fulfill the contract were prudent and reasonable and that it should not be cast.
The jurisprudence holds that anyone contracting with the Department to do road repair is obligated not to expose the traveling public to undue hazards. Hale v. Aetna Casualty & Surety Co., 273 So.2d 860 (La. App. 2nd Cir. 1973), writ denied, 275 So.2d 867 (1973).
Thus, K&M owed a duty to the public beyond the literal fulfillment of the plans and specifications of its contract with the Department.
The trial court specifically found:
"The evidence shows that K&M completed the center portion of the highway which was 22 feet in width over two months before the accident. Their delay in building up the shoulders to the level of the blacktop was due to the lack of material to meet the standard set by the State. The length of time allowing this drop-off has left no doubt in the mind of this Court as an unreasonable length in the delay to have dangerous condition remedied."
The trial court further found that K&M's failure to correct the dangerous drop off was a cause in fact of the accident.
A review of the record convinces this court that the trial judge was correct in finding K&M negligent under the circumstances presented. We agree that the trial court correctly held K&M liable and we will not disturb this finding on appeal. Arceneaux v. Domingue, supra.

NEGLIGENCE OF STEVEN EDWARDS
The trial court found that Edwards' driving was "substandard under the circumstances" yet held that his substandard conduct did not preclude his recovery *113 against defendants.[1] We conclude the trial court erred in this finding.
A motorist owes the duty of reasonable care which encompasses the additional duties of keeping his vehicle under control and maintaining a proper lookout for hazards. Sinitiere v. Lavergne, supra. In the Sinitiere case, the Supreme Court discussed the limits of this duty as follows:
"In Rue, supra, this Court stated that a motorist's duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. The reason for this statement was the jurisprudentially recognized rule that a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner in the absence of knowledge or reason to know of a defect."
However, the Court did not stop there but instead went on to discuss the limits of Rue and the significance of knowledge of the defect on the part of the driver as follows:
"This language does not establish the highway shoulder as a "zone of recovery" for every straying motorist. Rather, it states the simple principle that the law will not automatically bar a person from recovery or charge him with liability vis-a-vis third parties where the law does not charge that person with actual or constructive knowledge of an avoidable danger. Thus, if a person is chargeable with knowledge of a shoulder defect that could cause serious injury and, nevertheless, disregards his own safety and the safety of others, the law considers his actions in leaving the main travel portion of the roadway to be a breach of his duty to himself and to the others who can reasonably be expected to be injured by his actions. See Rodgers v. Department of Highways, 376 So.2d 1295 (La.App.2d Cir. 1979); Morrow v. Department of Highways, 377 So.2d 430 (La.App.2d Cir. 1979)."
(Emphasis added)
A review of the record leads this Court to the conclusion that Steven Edwards did breach the duty of reasonable care owed himself at the time he attempted to re-enter the surface portion of the highway.
The testimony of Edwards reveals that he was fully aware of the shoulder's dangerous condition. He had driven the road many times while the overlay project was in progress. At the trial, when asked whether or not he knew there was a drop off from the asphalt to the shoulder along this road, he replied, "Yeah, it scared me to death."
The record also shows that it was a clear day and that the road surface was dry. Although it was approaching dusk, the record supports that there was sufficient daylight at the time of the accident. State Trooper, Earl K. Townsend, who was the investigating officer and who was qualified as an expert in the field of accident reconstruction insofar as determining the speed of a vehicle from his investigations, testified at trial. It was Trooper Townsend's opinion that the Edwards vehicle was traveling at a speed of 65 miles per hour when it left the travel portion of the highway and that the accident was caused by the high speed of the car. Another expert, consulting engineer Herman Workentin, who was also qualified in the field of accident reconstruction, estimated the speed of Edwards' car at 71 miles per hour when it left the highway. Likewise it was Mr. Workentin's opinion that the speed of the car was a cause of the accident.
In addition, the trial judge found, as matters of fact, that Edwards lost control of his vehicle while attempting to maneuver it back onto the travel portion of the highway; that Edwards knew of the drop-off for over a four to six week period; and that Edwards was driving in excess of 55 miles per hour in violation of state speed limits.
*114 There is nothing in the record to indicate that Edwards could not have remained on the shoulder until he had reduced his speed enough that re-entry could have been safely made.[2]
Under these circumstances, we hold that the actions of Edwards were substandard and amounted to a breach of the duty of reasonable care owed himself. Further, the breach was a cause in fact of the harm he encountered.
Our finding that Edwards' negligence contributed substantially to the accident bars his recovery against any of the defendants.

STRICT LIABILITY UNDER C.C. 2317
By way of a supplemental brief, plaintiff argues in the alternative that the Department and K&M are strictly liable for the damages suffered by him. Since we have concluded that plaintiff's right of recovery is barred under the negligence theory of recovery (LSA-C.C. Article 2315) we find it necessary to discuss and consider this claim.
This court, in the recent case of Godwin v. Government Emp. Ins. Co., 394 So.2d 751 (La.App. 3rd Cir. 1981), discussed strict liability under Article 2317. In Godwin, the court stated:
"Louisiana Civil Code Article 2317 provides in pertinent part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody...."
In Loescher v. Parr, 324 So.2d 441 (La. 1975), the Louisiana Supreme Court discussed the concept of strict liability and described the legal foundation for such liability in the following manner:
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others."

In Jones v. The City of Baton Rouge Parish of East Baton Rouge, 388 So.2d 737 (La.1980), the Louisiana Supreme Court summarized the plaintiff's burden of proof in a strict liability action, the court therein stated:
"Because the responsibility for preventing the unreasonable risk of injury to others is unconditional, the injured party seeking damages under article 2317 need not prove that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect. Loescher v. Parr, supra, at pp. 446-447; Verlander, Article 2317 Liability: An Analysis of Louisiana Jurisprudence Since Loescher v. Parr, 25 Loyola L.Rev. 263 (1979)."
In the Godwin case the court also discussed strict liability on the part of public bodies saying:
"Prior to the Supreme Court's decision in Jones, supra, this court refused to subject public entities to liability under Civil Code Article 2317 for fear that such liability would lead to "chaotic results". Gallien v. Commercial Union Ins. Co., 353 So.2d 1127 (La.App. 3rd Cir. 1977). However, in Jones, supra, the court concluded that the Louisiana State Constitution of 1974 mandates such liability on the part of public bodies."
*115 Evidence adduced at trial established that the Department and K&M had custody or control over the highway and its shoulders to the extent that both bear responsibility for damages caused by any defects in the shoulder. The evidence also establishes that the shoulder was defective at the time of the accident; the defect was such that it occasioned an unreasonable risk of injury; and the defect was a cause in fact of plaintiff's damages. Therefore, considering these findings, plaintiff is entitled to recovery under the provisions of LSA-C.C. Article 2317 unless his recovery is barred by some available defense to such an action.
In Loescher v. Parr, 324 So.2d 441 (La. 1975) it was established that once the plaintiff proves custody, defect and causation, a defendant can escape liability only by showing fault of the victim, the fault of a third person, or an irresistable force.
This court, in Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La. App. 3rd Cir. 1981), under the circumstances there presented equated the measure of conduct necessary to achieve "contributory negligence" to the same measure necessary to amount to "victim fault" under Article 2317.
For the same reasons, we conclude that plaintiff was guilty not only of contributory negligence but also of "victim fault" such that the Department and K&M are not liable for his injuries under Article 2317.
The last issue regarding quantum is rendered moot by our holding on appeal.
For the above reasons, the judgment of the trial court is reversed and set aside and it is now ordered, adjudged and decreed that plaintiff's suit against defendants be dismissed with prejudice. It is further ordered that plaintiff-appellee is cast for all costs, both at the trial level and on appeal.
REVERSED AND RENDERED.
STOKER, J., concurs.
CULPEPPER, J., concurs on the basis that the Sinitiere case is controlling.
NOTES
[1] In so holding, the trial judge relied on Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), the leading case at the time. Since the judgment in this case was signed September 19, 1980, and since the Supreme Court did not render its decision in Sinitiere, supra until November 10, 1980, the trial judge did not have the benefit of the Sinitiere decision.
[2] This factor distinguishes this case from the recent case of McDaniel v. State of Louisiana, Department of Transportation and Development, 398 So.2d 88 (La.App. 3rd Cir. 1981), handed down by this court on April 15, 1981.