442 So.2d 1186 (1983)
Burl J. THOMAS
v.
Herman JACKSON, Jr., et al.
SOUTHERN COUNTY MUTUAL INSURANCE COMPANY
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
Nos. 15763-CA, 15764-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*1187 Eugene P. Cicardo, Alexandria, for plaintiff-appellant, Burl J. Thomas.
*1188 Cicero & Moak by Stacey Moak, Baton Rouge, for defendant-appellant, State of La., Dept. of Transp. and Development.
Gold, Little, Simon, Weems & Bruser by Robert G. Nida, Alexandria, for Southern County Mut. Ins. Co. and Douglas Hattaway.
Bethard & Davis by Walter E. Dorroh, Jr., Coushatta, for defendant-appellee, Herman Jackson, Jr.
Edward O. Kernaghan, Shreveport, for Herman Jackson, Jr. and Insured Lloyds Ins. Co.
Before PRICE, HALL and NORRIS, JJ.
HALL, Judge.
These consolidated suits arise out of an accident which occurred November 28, 1979 on U.S. Highway 71 about five miles south of Coushatta, involving a southbound pickup truck driven by Herman Jackson, Jr. with Burl Thomas as a passenger, and a northbound 2½ ton loaded dump truck driven by Bethel Risinger. The Jackson pickup went onto the shoulder of the road and after traveling some distance reentered the highway spinning counterclockwise and crossed over to the northbound lane where it collided with the dump truck.
After trial of the multiple demands, reconventional demands, and third party demands, the district court found Jackson and Risinger were not negligent and that the sole proximate cause of the accident was a drop-off between the paved surface and the shoulder of the road which constituted a vice or defect which created an unreasonable risk of injury to a motorist attempting to reenter the highway from the shoulder, rendering the DOTD strictly liable under LSA-C.C. Art. 2317.
Judgment was rendered against the Department of Transportation and Development in favor of Jackson and Thomas for their injuries, and in favor of the owner and subrogated collision insurer of the Risinger truck for property damage. All other demands of the parties were rejected. All parties except Jackson appealed.
The issues presented on appeal are:
(1) Liability of the DOTD;
(2) Negligence of Risinger;
(3) Negligence of Jackson; and
(4) Amount of damages awarded to Thomas.
Liability of DOTD
The record reveals that there is substantial evidence supporting the district court finding that there existed a defective condition in the disparity of the levels of the paved surface and shoulder of the highway which presented an unreasonable risk of injury.
Mrs. Carroll, a witness who was driving behind the dump truck and stopped at the scene, testified there was a four to six-inch drop-off at the point where the Jackson pickup reentered the highway, and that the drop-off was "dramatic." Thomas's brother, who went to the scene shortly after the accident, testified the drop-off was nine to ten-inches deep at that point, a little deeper than the length of his hand. Thomas went to the scene two days after the accident and found the drop-off to be nine to ten inches. Jackson observed a drop-off of four to five inches when he returned to the scene about two months after the accident. Photographs of the scene taken two months after the accident show a significant drop-off.
There was some testimony to the contrary. Trooper Graves who investigated the accident testified there was no drop-off between the road surface and shoulder although there was a slanted difference in elevation of two inches over a six-inch span at the edge of the highway. The trial court expressly stated that it placed little, if any, significance on the trooper's testimony. The weight of that testimony is diminished by the fact that the trooper's accident report showed a check mark by "defective shoulder", which the trooper said was done because of a direct order by his supervisor. Another witness, McDonald, who was driving *1189 ahead of the dump truck and walked back to the scene of the accident, testified the shoulder was in good shape and he noticed no drop-off. Risinger said he did not pay much attention to the shoulder but noticed a drop-off of no more than three to three and one-half inches. Oberlander, the highway department superintendent, testified maintenance work was done on the highway about a month before the accident and that he had not seen any drop-off in drive-by inspections. He also testified, however, that he did not know the exact site of the accident.
The preponderance of the evidence is that there was a significant and dangerous drop-off at the point where the Jackson pickup reentered the highway. The drop-off was unquestionably a substantial contributing factor in causing the pickup to go out of control and spin counterclockwise across the highway. DOTD's breach of its duty to maintain the highway and shoulder in a reasonably safe condition encompassed the risk of just the kind of accident and injury involved here, and it is strictly liable under LSA-C.C. Art. 2317 for the injuries caused by the defective condition of the highway. See LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979); Smith v. State, through Dept. of Transp., Etc., 412 So.2d 685 (La.App. 2d Cir.1982).
Negligence of Risinger
The trial court found that the evidence did not substantiate any negligence on the part of Risinger, the driver of the dump truck. This finding is not seriously contested by any party on appeal, and is clearly correct. He was traveling at 50-55 miles per hour, as shown by his testimony and that of Mrs. Carroll, who had been traveling two cars behind him for several miles. Jackson and Thomas both testified that the Risinger dump truck was about two feet over the center line as it was negotiating the curve, but Risinger denied that his truck ever crossed the center line. Importantly, Mrs. Carroll, whose testimony the trial court found to be "most persuasive", testified that at no time did the Risinger truck cross the center line. The preponderance of the evidence establishes that Risinger was driving in a proper manner and was not negligent.
Negligence of Jackson
The trial court found that the evidence was insufficient to establish that Jackson was traveling at an excessive rate of speed. It further found that at the time he entered the shoulder, Jackson either believed the oncoming Risinger truck was across the center line or he eased onto the shoulder to get as far to the right side as possible to avoid oncoming traffic negotiating a curve ahead of him. In either event, the court found Jackson was not negligent in driving onto the shoulder.
These findings by the trial court, as far as they go, are correct. Although Risinger and McDonald testified that in their opinion Jackson was traveling at a high rate of speed, about 70 miles per hour, they were not in a good position to be able to make an accurate judgment as to Jackson's speed. Mrs. Carroll was unable to say that Jackson was speeding. Jackson and his passenger both testified he was going 50 to 55 miles per hour.
Driving onto the shoulder, which was wide and did not have a significant drop-off at the point where Jackson drove onto the shoulder, was not negligence. Several cases have held that inadvertently driving onto a shoulder is not negligence. See Rue, supra, Sinitiere, supra, and other cases cited infra. In McDaniel v. State, Dept. of Transp. & Etc., 398 So.2d 88 (La.App. 3d Cir.1981), the court held that a driver who drove onto the shoulder because of an "illusion" that oncoming traffic was in his lane was not negligent.
The really difficult issue in this case, that is, whether Jackson was negligent in attempting to reenter the highway, was not specifically addressed by the trial court.
Although Jackson testified that he did not attempt to steer the pickup back onto *1190 the highway and that the pickup suddenly hit something and jumped back on the highway, the trial court found that he was attempting to reenter the highway, and the preponderance of the evidence supports this finding. Jackson's passenger, Thomas, testified Jackson was trying to get back on the road. Risinger stated that the driver of the pickup was trying to get it back on the road. Mrs. Carroll testified the driver of the pickup "jerked" the wheel to come back on the road. The manner in which the pickup reentered the road, crossing it diagonally as it spun counterclockwise, strongly indicates that the wheels of the truck were turned toward the paved surface of the highway when it hit the drop-off.
The evidence as to whether only the right wheels or all four wheels of the pickup went onto the shoulder, and as to what distance the pickup traveled on the shoulder, is conflicting and confusing. McDonald testified the pickup was entirely off the highway onto the shoulder when it passed him 100 yards from the scene of the accident and that the truck left the road 200 yards before it passed him. The trooper placed Jackson's exit onto the shoulder at 240 feet north of the point of impact. Jackson testified he was on the shoulder two to four seconds, that all four wheels were on the shoulder and that he was about 45 yards from the oncoming truck when he hit the shoulder. Thomas made the unlikely estimate that they were on the shoulder 25 to 30 seconds, and said only the two right wheels were on the shoulder. Mrs. Carroll testified she saw the pickup's right wheels go off the paved surface and then travel only about one car length before it returned to the paved surface.
There was evidence that the drop-off along the shoulder deepened as it ran from the north to the point where the pickup reentered the highway. Thomas's brother testified the rut ran along the shoulder for 100 to 150 feet and got deeper as the road went toward the curve to the south. Another witness who went to the scene two months after the accident testified there was not much of a drop-off at the point where the pickup left the road.
In considering whether Jackson's actions after he got onto the shoulder were negligent, we first note that the party asserting the negligence of another party has the burden of proving that negligence. However, it is also a well-settled principle of law that where a motorist crosses the center line of a highway and collides with an oncoming vehicle in the motorist's wrong lane of travel, the motorist is presumed to be negligent and has the burden of exculpating himself from negligence. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973); Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir.1977). Under the facts of the instant case, Jackson has the burden of proving that he was free from fault.
Next, we note that a body of law relative to defective shoulder accidents has developed from numerous cases decided in recent years beginning with Rue.
In Rue, the court held that even if a motorist's conduct was substandard in inadvertently driving onto the shoulder of a road, such substandard conduct does not encompass the risk of injury from striking an unexpected, negligently maintained highway shoulder. This is so because a motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. The court held that the driver who inadvertently allowed the right tires of her vehicle to leave the paved surface and lost control of her vehicle when the right wheel struck a deep rut adjacent to the ragged, eroded edge of the highway as she attempted to regain the paved portion of the road, was not barred from recovering from the highway department.
In the later Sinitiere case, the court held that the rule of Rue does not establish the highway shoulder as a "zone of recovery" for every straying motorist. Rather, it states the principle that a person is not automatically barred from recovery or *1191 charged with liability where the person does not have actual or constructive knowledge of an avoidable danger. If a person is chargeable with knowledge of a shoulder defect and disregards his own safety and that of others, his action in leaving the main traveled portion of the highway is a breach of his duty to himself and to others who can reasonably be expected to be injured by his action. The driver in the Sinitiere case inadvertently allowed his right two wheels to ease onto the shoulder. There was only a slight depression, if any, on the shoulder at the point where the wheels left the paved portion of the highway, but the depression deepened over a 100 foot span to the point where the driver attempted to reenter the highway. The driver allowed his vehicle to slow to about 35-40 miles per hour and then attempted to reenter the highway at a point where there was a 3½ to 4-inch drop-off from the paved portion of the highway to the shoulder. Contact between the wheel and the elevated edge of the roadway caused the driver to lose control of his vehicle, careen across the highway, and collide with an oncoming vehicle. The court held that the driver was not negligent in going onto the shoulder but he should have known something was seriously wrong at the point where he attempted to reenter the paved portion of the highway. He was not justified in failing to see the significant depression at that point and his breach of duty to observe what he should have seen was a cause-in-fact of the accident and had a substantial relation to the harm encountered by himself and the occupants of the vehicle with which he collided. The court held the driver was liable to the other parties and was precluded from recovering from the Department, which was also found liable to the other parties because of the defective shoulder.
Then in LeBlanc, the court allowed recovery by a motorist against the Department where the motorist inadvertently allowed her vehicle to stray from the roadway onto a dangerously low shoulder with a four to six-inch drop-off, immediately and instinctively attempted to steer her vehicle back onto the roadway, lost control, and collided with an oncoming vehicle on the other side of the road. The court held that a motorist's instinctive overreaction to an abrupt drop-off between the roadway and the shoulder is part of the risk against which the Department's duty to maintain the shoulder in a reasonably safe condition is designed to protect. In distinguishing Sinitiere, the court noted the Department's duty does not protect a motorist against a shoulder defect of which the motorist has knowledge and a reasonable opportunity to avoid, but in LeBlanc the motorist had no knowledge of the defect.
Several court of appeal cases have reached varying results, depending on the facts and circumstances of each case. Smith v. State, through Dept. of Transp., supra, involved facts similar to the instant case but the driver who lost control while attempting to reenter the highway and who was found negligent in the trial court did not appeal and his negligence was not at issue on appeal.
Godwin v. Government Emp. Ins. Co., 394 So.2d 751 (La.App. 3d Cir.1981), also involved similar facts. The driver inadvertently allowed the right wheels of her vehicle to leave the paved portion of the highway. She had no prior knowledge of the 2½ to 3-inch drop-off and was not negligent in leaving the highway. After she got on the shoulder she had no difficulty controlling her automobile and there were no obstructions on the shoulder to prevent her from gradually slowing her vehicle to a complete stop if necessary and then maneuvering her automobile back onto the paved surface. The accident was caused by her attempting to return to the pavement at too great an angle, failing to significantly reduce the speed of her automobile, and oversteering to the left. The court concluded that the driver's actions after she left the pavement and traveled on the shoulder were negligent, barring her recovery against the Department and rendering her jointly responsible with the Department for injuries sustained by a passenger in her car.
*1192 In Edwards v. State, Dept. of Transp. & Devel., 403 So.2d 109 (La.App. 3d Cir.1981), there was a drop-off of approximately three inches between the level of a new asphalt overlay and the shoulder of the road. The driver allowed the right wheels of his vehicle to go off the asphalt onto the shoulder. When he subsequently attempted to reenter the highway he lost control of his vehicle which skidded across the highway and turned over. The driver was traveling at an excessive rate of speed and knew of the drop-off. There was nothing to indicate that he could not have remained on the shoulder until he reduced his speed enough that reentry could have been safely made. The court held the driver's actions were substandard and amounted to a breach of the duty of reasonable care owed himself and was a cause-in-fact of the accident. His negligence contributed substantially to the accident and barred his recovery against the Department.
A contrary result was reached in McDaniel v. State, Dept. of Transp. & Etc., 398 So.2d 88 (La.App. 3d Cir.1981). The driver steered his vehicle to the shoulder on the right because of an illusion that the lights of oncoming cars in a curve were in his lane. He subsequently lost control of his car, veered across the highway, and collided head-on with an oncoming vehicle. There was a four to 10-inch drop-off between the recently overlaid surface of the highway and the shoulder, and also a steep shoulder-ditch drop-off. Significantly, it was not established that the driver ever regained control after slipping off the paved surface. The court affirmed a trial court finding that the driver was free of negligence.
In a series of cases involving separate accidents which each occurred in a curve on the same stretch of a highway, the court found motorists free of negligence. Payne v. Louisiana Dept. of Transp., & Etc., 424 So.2d 324 (La.App. 1st Cir.1982), involved a motorist whose right tires strayed onto the shoulder of the road. After slowing down, she attempted to regain the paved roadway but lunged across the road into the path of an oncoming car. There was a six to eight-inch drop-off from the paved roadway to the shoulder. The court found the driver was not guilty of victim fault so as to preclude recovery. She was not familiar with the highway defect, she was propelled to the shoulder by inadvertent straying and an adverse crown to the road on a curve, almost turned over when she went on the shoulder, and instinctively tried to protect her child riding with her. In Thornhill v. Louisiana Dept. of Transp., & Etc., 424 So.2d 331 (La.App. 1st Cir.1982), the motorist found free from fault slowed down as he entered the curve, eased onto the shoulder because an oncoming car had drifted into his lane, and continued through the curve steering to the left. All of a sudden the car went roughly to the left, shot across the road, through a ditch and into trees on the other side of the road. The court held that the Department's duty extended to protecting this motorist from this type of accident. Although the motorist knew of the defective condition of the road, he had no reasonable opportunity to avoid driving onto the shoulder. In Everett v. Louisiana Dept. of Transp., & Etc., 424 So.2d 336 (La.App. 1st Cir.1982), the driver failed to negotiate the curve and ran onto the shoulder, traveled 264 feet on the shoulder along the ditch, straightened the vehicle preparatory to reentering the highway, reentered and crossed both lanes sideways, hit the opposite ditch bank and overturned. The driver's negligence was not at issue in this suit brought against the Department by the decedents of the driver's wife who was a passenger in the car and was killed in the accident. In Murphy v. Louisiana Dept. of Transp., & Etc., 424 So.2d 344 (La.App. 1st Cir.1982), the driver drove the right wheels of her car onto the shoulder to avoid an oncoming vehicle, traveled an undetermined distance along the shoulder, and jerked the wheel "real hard" to get her car back on the road. The vehicle "jumped" back on the road, threw the driver into a passenger, went out of control across the highway, and turned over. The court affirmed a trial court finding *1193 that the driver was free from negligence, without further explanation.
In Cullivan v. State Farm Mut. Auto. Ins. Co., 428 So.2d 1231 (La.App. 3d Cir. 1983), the court affirmed a trial court holding that the motorist was free from negligence where she did not have actual or constructive knowledge of the defective condition of the shoulder which was soft and slippery with a five to six-inch drop-off. There the right wheels left the road and veered onto the shoulder. When the driver attempted to reenter the roadway her car hurtled across the highway and collided with an oncoming vehicle.
In Palermo v. Allstate Ins. Co., 415 So.2d 437 (La.App. 1st Cir.1982), the driver inadvertently hit a deep rut on the shoulder next to the paved portion of the highway and then swerved across the highway and collided with an oncoming truck. In affirming a finding of negligence on the part of the driver, the court found no negligence in going onto the shoulder and pointed out that the Department, which made no claim of "negligent re-entry", had failed to develop any theory of negligence on the part of the driver.
Turning to the facts of the instant case, Jackson deliberately drove his pickup truck, traveling at or near the 55-mile-per-hour speed limit, either partially or all the way onto the shoulder because of an erroneous perception of the necessity of doing so in order to avoid oncoming traffic. He traveled a considerable distance with his wheels on the shoulder, only slightly reducing his speed. There is no evidence of any obstructions existing on the dirt and gravel shoulder, which appears to have been fairly wide and flat. The rut or drop-off deepened as Jackson traveled south to approximately four to 10 inches at the point where he attempted to reenter the highway. The evidence does not indicate any reason why Jackson could not have proceeded farther along the shoulder, further reducing his speed.
While it cannot be said that Jackson had actual knowledge of the extent of the drop-off at the exact point where he attempted to reenter the paved portion of the highway, he testified he felt a drop when he left the highway and that the rear end of his truck skidded a little. His passenger testified the tire went down as if in a trench.
Having driven onto the shoulder, knowing that there was some degree of difference in the elevation of the paved surface and the dirt and gravel shoulder, it was incumbent upon Jackson to remain on the shoulder, there being no obstruction to his doing so, until he had reduced his speed to a point where he could reenter the pavement safely without danger of losing control of his truck. It was incumbent upon him to make sure the highway surface was such that it did not present a hazard to his safe reentry to the pavement. His action in attempting to reenter the pavement from the shoulder while still traveling at a substantial rate of speed in the face of oncoming traffic at a point where there was a significant drop-off was substandard and negligent. His breach of duty in this respect encompassed the risk of injury to himself, his passenger, and others traveling on the highway. The accident would not have happened but for his negligent attempt to reenter the highway under these circumstances, and his negligence was a cause-in-fact of the accident. Vis-a-vis the DOTD, the duty of the Department to maintain the shoulder in a reasonably safe condition, while encompassing the risk of injury to a motorist driving on the shoulder in a reasonable manner under the circumstances, does not encompass the risk of injury to a motorist who negligently, as distinguished from instinctively or because of necessity, attempts to exit from the shoulder onto the paved portion of the highway, so as to excuse the motorist's substandard driving in that respect.
Because of his negligence, Jackson is barred from recovery from the DOTD and is liable in solido with the DOTD to Thomas and to the owner and insurer of the other vehicle involved in the accident.

*1194 Amount of Damages Awarded to Thomas

Burl Thomas argues that the general damage award of $25,000 is inadequate and that the trial court erred in failing to make any award for loss of earnings.
Thomas was seen by Dr. Hanna in Coushatta on the day of the accident. He had a large laceration of the scalp, which was sutured, and complained of neck pain. He was fitted with a cervical collar. Several days later he was referred to the LSU Medical Center in Shreveport for evaluation of his neck injury.
Examination and X-rays at the medical center disclosed that Thomas had a fracture of the second odontoid process or second vertebra in the neck, with minimal displacement. He was admitted to the hospital and placed in head halter traction. He was later fitted with a halo, a metallic device with four screws in the head. He was also placed in a plaster cast with the halo attached to it. Thomas remained in the hospital for 24 days.
He returned for checkups on two occasions, an was last seen at the center on January 28, 1980, about two months after the accident.
According to the doctor, an injury of this type ordinarily heals in 12 to 16 weeks and leaves no permanent disability. The injury was painful, and the cast which he was required to wear was very uncomfortable. Thomas himself removed the cast and the halo, including the screws in his head, about three months after the accident.
Thomas testified as to his substantial pain and stated he was unable to go back to work for a year after the accident. Thomas testified he worked as a body repair man at Linwood Body Shop at the time of the accident, earning $450 per week which he was paid in cash. He offered no supporting documentary evidence, such as W-2 forms, and his employer was not called to testify.
The fact that Thomas worked at Linwood Body Shop and could not go back to work for a year was corroborated by the testimony of his brother. There was no corroboration of the amount of his pay and no medical corroboration of disability beyond the three or four-month period ordinarily expected for this type injury. Dr. Bicknell, an orthopedic specialist, saw Thomas a little more than a year after the accident and opined the fracture had entirely healed since it did not show up on his X-rays. The doctor attributed Thomas's complaint of neck pain as being muscular and was of the opinion Thomas was not disabled in any respect.
The trial court found Thomas to be a rather tough individual with a somewhat unusual tolerance for pain, that there was no evidence that his recovery was other than normal, and that he certainly had quite a bit of pain and anguish associated with his injury. The court found no substantiation for the lost wages claim.
While the award is on the low side, we find no abuse of discretion in the court's award of $25,000 for general damages. We do find, however, that the trial court erred in failing to make an award for lost earnings or earning capacity. Thomas's testimony that he was employed at the time of the accident is corroborated. That he was disabled from working for several months is certain. The lack of corroboration of the amount he earned at his employment makes his testimony in that regard highly suspect. Nevertheless, Thomas is entitled to an award for lost earning capacity during the period of disability. We fix the award at $4,000.
Decree
For the reasons assigned, the judgment of the district court is reversed in part, amended in part, affirmed in part, rendered and recast as follows:
It is ordered, adjudged, and decreed:
(1) That there be judgment rejecting and dismissing all demands of Herman Jackson, Jr. against all parties herein;
(2) That there be judgment in favor of Burl J. Thomas against the Department of Transportation and Development, State of Louisiana, Herman Jackson, Jr., and Jackson's *1195 liability insurer, Insured Lloyds Insurance Company, in solido, in the amount of $32,972, with legal interest thereon from date of judicial demand until paid; all other demands of Burl J. Thomas against other parties are rejected and dismissed;
(3) That there be judgment in favor of Southern County Mutual Insurance Company against the Department of Transportation and Development, State of Louisiana, Herman Jackson, Jr., and Jackson's liability insurer, Insured Lloyds Insurance Company, in solido, in the amount of $7,920.78, with legal interest thereon from date of judicial demand until paid;
(4) That there be judgment in favor of Douglas Hattaway against the Department of Transportation and Development, State of Louisiana, Herman Jackson, Jr., and Jackson's liability insurer, Insured Lloyds Insurance Company, in the amount of $1,171.72, with legal interest thereon from date of judicial demand until paid;
(5) That Herman Jackson, Jr. and his liability insurer, Insured Lloyds Insurance Company, are awarded contribution against the Department of Transportation and Development, State of Louisiana, for one-half of the amount of the judgments rendered herein; and the demands of Herman Jackson, Jr., and Insured Lloyds Insurance Company against the Department for indemnification are rejected and dismissed;
(6) That expert witness fees of Dr. Richard Hanna, Dr. Herbert Husbands, Dr. Harold Bicknell, and Dr. Don Burt are fixed at the sum of $150 each; and the fee of Dr. John Gregory is fixed at the sum of $250, with all fees to be taxed as costs of court; and
(7) Costs of these proceedings, including the cost of appeal, are assessed to the Department of Transportation and Development, State of Louisiana, Herman Jackson, Jr., and Jackson's liability insurer, Insured Lloyds Insurance Company, in solido.
Reversed in part, amended in part, affirmed in part, rendered and recast.