424 So.2d 331 (1982)
E.L. THORNHILL
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 14823.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
Rehearing Denied January 14, 1983.
*332 Hobart Pardue, Springfield, and Phillip Hagger, New Orleans, for plaintiffs Glen Murphy, E.L. Thornhill, Clarence Everett and Roy Payne.
Paul Dué, Baton Rouge, for plaintiffs Elliot Watson, et al.
William J. Doran, Baton Rouge, for defendants Louisiana Dept. of Transp. and Development et al.
Before SHORTESS, SAVOIE and ELLIS, JJ.
SAVOIE, Judge.
Five cases were consolidated for trial (Numbers 14,822; 14,823; 14,824; 14,825; and 14,826). The Louisiana Department of Transportation and Development (Department) is a common defendant and appellant in each case, which stem from four different automobile accidents, three of which involved single vehicles. The same proximate location is involved also: Louisiana Highway 43 in Livingston Parish, approximately 3.4 miles north of its intersection with U.S. Hwy. 190. In all four accidents, a southbound motorist left the roadway after failing to negotiate a curve. The curve was described as 400 feet long, turning through a delta angle of 20° to 30°, resulting in an estimated 5.9° curve. The road is 20 feet wide with 3 to 4 foot shoulders on each side. On the west side, the ditch is 12 to 14 feet from the road. On the east side, the ditch is flatter and its bank is about 22 feet off the road. The curve is not super-elevated and has an adverse crown[1] at its end.
We dispose of these cases with separate opinions in order to promote a proper understanding of the factual situation surrounding each.
Defendant-appellant appeals the trial court's award of damages in tort. We affirm.
On the evening of April 14, 1978, plaintiff-appellee was proceeding south on La. Hwy. 43. Being familiar with the highway, having driven it "every day of his life", he knew the roadway had been recently resurfaced with an asphalt overlay. The shoulders were not flush to the roadway in the curve, the Department having failed to regrade them after the asphalt overlay operation. Proceeding south, he noted a curve sign suggesting a speed of 40-45 miles per hour was required.
Appellee testified he was proceeding about 55 miles per hour as he approached the curve; that he reduced his speed as he entered the curve, as he always did, because it was sharp and motorists coming north had a tendency to drift over into the southbound lane; that it was night; that he saw lights coming from around the curve; that he slacked up; that the on-coming car came around the curve at a high rate of speed and drifted into his lane; that he knew he was going to be involved in a "pretty good *333 wreck" if he did not get over and away from it; that he started easing off the road to his right and onto the shoulder; that when he did, the other car passed him; that after it passed, he started to get his car back onto the road; that he turned his steering wheel to the left and nothing happened because he was tracking around the curve; that he continued through the curve, steering to the left, thinking he had not turned it far enough; and that "all of a sudden" the car went roughly to the left, shot across the road, through the ditch, and into the trees on the other side of the road. When questioned, "Do you know what caused your car to go to the left so abruptly?", appellee answered:
"The shoulder of the road had a drop-off and as you progressed through the curve, the shoulder slowly built back up to approximately the level of the highway, and once it had built back up enough, it just caught hold finally ... got traction, and just shot me across the road."
The following day, appellee returned to observe the accident scene. He found a drop-off, measuring approximately 5½ to 7 inches, between the roadway and the shoulder.
Officers, investigating the Coates accident (No. 14,824) which occurred at the same location on April 15, 1978, made the following observations concerning the roadway and the shoulder. Louisiana State Police Trooper, Roy Gilfour, measured the drop-off in the curve to be approximately 6 to 8 inches deep. He testified that two factors contributed to the drop-off: (1) the roadway had been resurfaced and elevated, and (2) vehicular traffic, running off the roadway, had created a rut. Livingston Parish Deputy Sheriff, William E. Robinson, Jr., estimated the drop-off in the curve from 2 inches to 6-8 inches. He testified that at its deepest point, the drop-off was about 8 inches. Another Livingston Parish Deputy Sheriff, Bobby Gill, testified that he observed a 5-7 inch drop-off.
Testimony also clearly indicates the Department had failed to erect any warning signs concerning the low shoulder despite a long history of accidents in this location.
Appellant lists the following specifications of error:
"I. The trial court erred in its finding that there was present on the roadway at the time of these accidents, a condition which was patently and obviously dangerous to a driver exercising ordinary care and reasonable prudence.
"II. The trial court erred in failing to find the drivers of the various vehicles guilty of negligent conduct which was the sole cause of these accidents, or in the alternative, from finding these drivers to be guilty of contributory negligence, or in the further alternative, for failure to find that the recovery of these plaintiffs was barred by "victim fault" or fault of a third party which would constitute an intervening cause of these accidents and would bar recovery under any doctrine of strict liability.
"III. The trial court erred in failing to reduce any award to the Watsons by its virile share based upon the settlement of the Watsons with Travelers Insurance Company and United States Fidelity & Guaranty Company, or in the alternative, erred in failing to grant credit to the Department of Transportation for amounts paid as a result of these settlements.
"IV. The trial court erred in awarding to plaintiffs an excessive amount of damages."
All rules of conduct are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that can befall him, merely because it shows that the violation of the rule played a part in producing the injury.
The Department's general duties toward motorists on the highway are set forth in Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980), wherein our Supreme Court held as follows:

*334 "It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of the hazardous condition and fails to take corrective action within a reasonable time." Sinitiere, supra, pp. 824-825. (Emphasis added).
Consequently, it is necessary that we carefully examine the facts in the present case to determine whether a legal duty is imposed upon the Department which protects against the particular risk involved. LeBlanc v. State of Louisiana and the Louisiana Department of Highways, 419 So.2d 853 (La.1982).
Appellee has shown by a clear preponderance of the evidence that on the date of this accident, a 6 to 8 inch rut was present between the roadway and the shoulder. This rut constituted a dangerous condition and a defect in the highway.
Appellee proved that the highway at this location had a long history of accidents, dating back to 1974. He also proved that by March, 1976, an asphalt overlay of 1½ inches had been applied to the highway. Since that date, there had been no work on the shoulders to bring them flush with the roadway. Additionally, Hubert Stilley, a local resident, saw an accident in the general vicinity in the fall or summer of 1976. Upon investigation, he determined the shoulder to be a good bit lower than the roadway. He called the Highway Department office in Hammond to advise them of the dangerous condition which he felt warranted repair. These facts show by a clear preponderance of the evidence that the Department had actual notice of the highway's defective condition, but failed to take corrective action within a reasonable time. Thus, liability under negligence may attach.
It is well settled in Louisiana that for a plaintiff to recover in negligence, he must prove: (1) that the act complained of was a cause-in-fact of the accident, (2) that the defendant had a duty, either statutory or non-statutory, to protect this plaintiff against the cause of harm complained of, (3) that the defendant breached this duty to protect this plaintiff, and (4) that the plaintiff was harmed by this breach of the duty owed. Mathews v. Elder International, 400 So.2d 251 (La.App. 4th Cir.1981); Kane v. Braquet, 368 So.2d 1176 (La.App. 3rd Cir. 1979), writ denied, 369 So.2d 1366 (La.1979); also see generally Pierrotti v. Associated Indemnity Corp., 399 So.2d 679 (La.App. 1st Cir.1981).
In the instant case, the trial court found as a matter of fact, that the defect in the shoulder was the cause-in-fact of the accident. Great weight is given the findings of the trial court, and only where its findings are clearly wrong will they be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Department has a duty to see that the highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Sinitiere, supra; Smith v. State, Department of Transportation and Development, 412 So.2d 685 (La.App. 2d Cir.1982); Sibley v. Menard, 398 So.2d 590 (La.App. 1st Cir.1980), writ denied, 400 So.2d 211 (La.1981). Included within these duties of the Department is the maintenance of the shoulders of the highways in a reasonably safe condition. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
The scope of the Department's duty extends to protecting this motorist from this type of accident. Appellee is within the ambit of the Department's duty.
Appellee has shown by a preponderance of the evidence that the Department breached its duty by not leveling the shoulder;[2] that in 1976 Hubert Stilley informed the Department the curve required maintenance *335 of the low shoulders; that this curve had a history of accidents; and that no warning signs were present prior to the curve to warn motorists of the deep dropoff. These facts substantiate appellee's claim that the Department breached its duty to maintain a safe roadway.
It is uncontested that appellee sustained injuries as a result of the accident. Therefore, the trial court found appellee had proven a prima facie case of negligence against the Department. We agree.
Appellant contends appellee's contributory negligence or fault bars any recovery. A motorist's duty of reasonable care includes the duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 608 (La.1976). Further, a motorist has a duty to maintain proper look-out for hazards and by using ordinary care and observation, he should be able to see and to avoid running into them. Southern Farm Bureau Casualty Ins. Co. v. Gay, 276 So.2d 893 (La.App. 1st Cir.1973). The Department's duty is not imposed to protect a motorist against a shoulder defect of which he has full knowledge and a reasonable opportunity to avoid. Sinitiere, supra; LeBlanc, supra.
Here, the uncontradicted evidence indicates that appellee, as he approached the curve, slowed his vehicle because he knew of past accidents in the curve; that as he slowed his vehicle, he saw lights approaching from the opposite direction from the vehicle which was drifting into his lane of traffic; that he slowed, drifted off the roadway onto the shoulder and was able, with this maneuver, to avoid a collision with the on-coming vehicle; that his right wheels caught the rut which he described, and Sergeant Gilfour found, and that his car tracked its way around the curve and bolted suddenly across the highway at the end of the curve. Thus, while appellee had full knowledge of the defect in the road, he had no reasonable opportunity to avoid driving onto the shoulder.
This court may not substitute its conclusion of fact for that of the trial court unless those conclusions are clearly erroneous. Abadie v. Morales, 391 So.2d 974 (La.App. 4th Cir.1980); Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ refused, 392 So.2d 690 (La.1980). And only if the trial court is clearly wrong will its decision be reversed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Under the facts and circumstances outlined above, we cannot say that the trial court was in error in concluding that plaintiff was free of negligence. This conclusion will not be disturbed on appeal.
Appellee suffered a contusion to his left leg and left cheek, and separated his left shoulder. Dr. Herbert Plauche, an orthopedic surgeon, recommended surgery to repair appellee's left shoulder, which to date, appellee has declined. Dr. Plauche stated that appellee suffered a permanent disability of 20% loss of function of his left upper extremity. The court awarded general damages of $27,500.00 and special medical expenses of $150.29.
The Department argues that the trial court erred in awarding appellee excessive damages, but has failed in its brief or in argument to specify any reason to justify a reduction in the award. Our examination of the record indicates that while the award is somewhat generous, it does not abuse the great discretion afforded the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979).
For the reasons set forth above, judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
SHORTESS, J., concurs and assigns reasons.
SHORTESS, Judge, concurring.
I respectfully concur.
The plaintiff herein operated his vehicle as a prudent motorist, observing his duty to keep a proper lookout and to maintain control of his vehicle. Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir. 1980); Courtney v. Lambert Const. Co., Inc., 355 So.2d 72 (La.App. 1st Cir.1978), *336 writ denied, 356 So.2d 430 (La.1978); Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir. 1975), writ denied, 325 So.2d 608 (La.1976); and Southern Farm Bureau Casualty Ins. Co. v. Gay, 276 So.2d 893 (La.App. 1st Cir. 1973). The uncontroverted evidence indicates that plaintiff, as he approached the curve, slowed his vehicle because he knew of past problems in the curve; that as he slowed his vehicle, he saw lights approaching from the opposite direction from a vehicle which was drifting into his lane of traffic; that he slowed, drifted off the roadway onto the shoulder and was able, with this maneuver, to avoid a collision with the oncoming vehicle; that his right wheels caught the rut, which he described and Sergeant Gilfour found, and his car tracked its way around the curve and bolted suddenly across the highway at the end of the curve. Clearly, plaintiff was confronted with an emergency situation not unlike that presented in McDaniel v. State, Dept. of Transp. & Etc., 398 So.2d 88 (La.App. 3d Cir.1981), writ denied, 404 So.2d 277, 279 (La.1981), where the plaintiff drove onto the shoulder because he felt it necessary in order to avoid an oncoming vehicle. The court in McDaniel found conflicting testimony as to whether the plaintiff ever regained sufficient control of his vehicle after leaving the highway, to attempt a safe reentry, and resolved said conflict in favor of plaintiff. Here, there is no conflicting evidence. The plaintiff lost control while attempting to safely maneuver the rut. His actions in leaving the highway and manuevering the shoulder with its defect, were reasonable.
Applying the Sinitiere "but for" test to determine cause-in-fact, plaintiff's accident would not have happened had the shoulder been properly maintained. Further, there was a substantial causal relationship between the failure to correct the defect and the accident.
Accordingly, I concur.
NOTES
[1] An adverse crown is present when the road slopes in the same direction as the centrifugal force. The centrifugal force, therefore, assists rather than opposes the force. In this case, the force created by the vehicle going through this curve would tend to throw the vehicle outward, and the adverse crown would tend to increase the outward force.
[2] It is to be noted that the shoulder's drop-off was accentuated by the Department's asphalt overlaying operation in 1975-76.