487 So.2d 127 (1986)
Pamela D. SCHILLING
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, et al.
Charles E. LAMKIN, Sr., Walburga M. Lamkin, and State Farm Mutual Automobile Insurance Company
v.
Pamela D. SCHILLING, John H. Taylor, G.B. "Boots" Smith Corporation, United States Fidelity & Guaranty Company, and Fidelity & Casualty Company of New York.
Nos. 84 CA 1438, 84 CA 1439.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Writ Denied May 30, 1986.
*128 Michael Paduda, Bogalusa, for U.S.F. & G defendant.
Bruce Bennett, Hammond, for Pamela Schilling plaintiff-appellant.
Ronald R. Thompson, Baton Rouge, for Dept. of Transp. & Dev. defendant-appellant.
Dale E. Branch, Bogalusa, for Walburga Lamkin, Charles E. Lamkin, Sr. defendant-appellee.
Before CARTER, SAVOIE and ALFORD, JJ.
CARTER, Judge.
This is an appeal from the trial court judgment awarding plaintiff damages for personal injuries arising out of an automobile accident.

FACTS
On January 25, 1980, plaintiff, Pamela D. Schilling, was involved in an automobile accident when the car she was driving encountered an eighteen-wheel truck driven by John H. Taylor and owned by G.B. "Boots" Smith Corporation. Plaintiff was proceeding south on the inside lane of a curve on Louisiana Highway 21 in St. Tammany Parish[1] when the eighteen-wheel truck, which was carrying a wide load of steel construction frames, crossed the center line of the highway. In order to avoid a collision with the eighteen-wheel truck, plaintiff steered her car to the right and onto the shoulder of the road. At that point, plaintiff contends that the right front tire of her car fell into a rut on the shoulder and prevented her from maneuvering the vehicle. Plaintiff continued to steer right because of the intrusion of the eighteen-wheel truck and its wide load into her lane of travel. However, plaintiff's car began to spin clockwise, crossed the highway, and collided with a pick-up truck driven by Walburga M. Lamkin which was following the eighteen-wheel truck. As a result of this collision, both drivers sustained damages.
Plaintiff filed suit for damages (Suit Number 59,532) against John H. Taylor, G.B. "Boots" Smith Corporation, and its liability insurer, United States Fidelity & Guaranty Company (USF & G). Plaintiff subsequently amended her petition, naming as additional defendants Walburga M. Lamkin, Lamkin's insurer State Farm Mutual Automobile Insurance Company (State Farm), and plaintiff's own insurer, The Fidelity & Casualty Company of New York *129 (Fidelity & Casualty Company). Thereafter, plaintiff amended her petition to name the State of Louisiana, through the Department of Transportation and Development (DOTD) as a defendant.
On January 13, 1981, Charles E. Lamkin, Sr., Walburga M. Lamkin, and State Farm filed suit for damages (Suit Number 63,161) naming as defendants Pamela D. Schilling, John H. Taylor, G.B. "Boots" Smith Corporation, USF & G, and Fidelity & Casualty Company. Lamkin later amended his petition to add DOTD as a party defendant. DOTD filed a third party demand, requesting contribution and indemnity from Pamela D. Schilling, John H. Taylor, G.B. "Boots" Smith Corporation, USF & G, Fidelity & Casualty Company, Walburga M. Lamkin, and State Farm.
Upon the motion of State Farm, Suit Number 59,532 and Suit Number 63,161 were consolidated. Prior to trial all claims were settled, except plaintiff's claim for damages against DOTD, which proceeded to trial on the merits.
After trial, the trial judge rendered judgment against DOTD, finding that DOTD and John W. Taylor, driver of the truck owned by G.B. "Boots" Smith Corporation, were equally at fault in causing plaintiff's damages. The trial judge awarded plaintiff $95,000.00 for general damages, $4,241.94 for past medical expenses and expert witness deposition fees, and $5,200.00 for future medical expenses, but reduced the total judgment by one-half for the percentage of negligence attributable to John H. Taylor, the driver of the G.B. "Boots" Smith Corporation truck.
From this judgment, DOTD appeals raising the following issues:[2]
1. The Trial Court committed manifest error by finding the existence of a defect on La. Hwy. 21 at this curve where the accident occurred. The plaintiff did not carry her burden of proof in proving that there was a defect at the curve which caused the accident complained of. The only evidence presented was that of the plaintiff herself and it was manifest error to accept that selfserving testimony;
2. The Trial Court committed manifest error by failing to find that the actions of the driver, Pamela Schilling, constituted negligence or contributory negligence on her part;
3. The Trial Court committed manifest error by not recognizing the chronological sequence of events in this case and further, the Trial Court committed error with respect to the plaintiff's burden of proof; and,
4. The Trial Court committed manifest error by awarding excessive damages to the plaintiff and abused his discretion based on the evidence and testimony submitted by plaintiff.
Plaintiff answered the appeal, raising the following issues:[3]
1. The trial court erred in not finding that the State of Louisiana, Department of Transportation and Development is liable under theories of both strict liability and negligence under the prevailing jurisprudence and statutes of the State of Louisiana;
2. The trial court erred in not finding that said fault in the form of strict liability and negligence on the part of the Department of Transportation and Development was the superseding cause of petitioners injuries and, therefore, that the defendant, Department of Transportation and Development was not solidarily liable with defendant John Taylor but was in fact the sole proximate cause of the accident in question;
3. The trial court erred in not awarding petitioner damages for post traumatic injury (stress) syndrome as testified to by unrebutted expert testimony, said damages in the amount of not less than $50,000.00; and,

*130 4. The trial court erred in not awarding damages to petitioner other than nominal damages for impairment of earning capacity, to the extent of $75,336.00.

Liability of DOTD
The general duties of DOTD toward the traveling public are set forth in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) as follows at p. 824-825:
It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.
Since road shoulders are only designed for temporary use when a motorist finds himself off the roadway, the Department's duty of care is generally discharged at a level of construction and maintenance less than that required for the primary road surface. However, an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other. (footnote omitted).
See also Edwards v. State, Dept. of Transp. & Devel., 403 So.2d 109 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 733 (La.1981).
In the case sub judice, plaintiff testified that she saw a rut in the shoulder shortly after leaving the traveled portion of the highway to avoid the oncoming eighteenwheel truck, that she felt her right tire settle into the rut, and that she was unable to steer her car safely back onto the traveled portion of the highway because of the rut. Plaintiff testified as follows:
Q. Describe for me what action, if any, you took to avoid the truck?
A. When I first saw the truck, I applied the brakes and I got over to the edge of the highway and upon seeing that he was not getting over at all, I went ahead and took to the shoulder, and when I did I felt the car drop down, the right tire, drop into what I felt like a rut. I looked up and there was a rut along the shoulder of the road.
Q. This rut, where was the rut in relation to the edge of the paved surface of the highway?
A. It was next to the pavement's edge.
Q. Do you recall how wide that rut was?
A. It felt as if and looked as if it would be about the size of a regular passenger tire. Since my tire was bounded in it, it couldn't have been any wider than a passenger tire.
Q. Do you have any idea how deep the rut was?
A. I would say four to six inches because I felt the car drop down suddenly. It jarred me.
* * * * * *
Q. What did you do to get out of the rut or did you make any attempts to get out of the rut?
A. Yes, sir. I pulled to the right trying to get onto the shoulder of the road once, and it wouldn't give. So I pulled a second time further and it remained in the rut. It was just bound in the rut and I couldn't get it out.
Q. You couldn't get out of the rut?
A. I could not get out of the rut.
Q. What happened then?
A. The second time I pulled the car hard or severely, the car began to spin and that's all I remember.
Plaintiff's testimony was corroborated by Andrew J. McFate, professor of mechanical engineering at Louisiana State University. McFate was qualified as an expert in mechanical engineering with expertise in dynamics. McFate opined that, under the facts and circumstances outlined in plaintiff's testimony, plaintiff's automobile would not have gone into a clockwise spin and would not have been thrown into *131 the path of the oncoming traffic but for the rut along the shoulder.
Additionally, although officials of DOTD testified as to regular maintenance of Highway 21 in the area and around the time of the accident, they admitted that a rut of the nature described by plaintiff could form in a matter of days. Further, the only direct evidence of the condition of the shoulder at the time of the accident was plaintiff's testimony.
The trial judge found that plaintiff's injuries were caused by the combined negligence of John H. Taylor, the driver of the eighteen-wheel truck, and DOTD. The trial judge also found that DOTD was responsible for the condition of the shoulder and that the rut in the shoulder had caused plaintiff's car to careen out of control and into the path of the oncoming traffic.
After considering all of the evidence, we cannot say that the trial judge was manifestly erroneous when he determined that there was a rut in the shoulder of the curve, that this defect was one of the causes of the accident, and that DOTD was liable to plaintiff. Absent a finding that the trial judge was manifestly erroneous in his factual findings, this court cannot disturb those findings on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).

Liability of Taylor
The law is clear that when a driver strays onto the wrong side of the road and collides with another car which is travelling in its proper lane, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. Baham v. Patterson, 353 So.2d 366 (La.App. 1st Cir.1977), writ denied, 354 So.2d 1049 (La.1978); Johnigan v. State Farm Mut. Auto. Ins. Co., 345 So.2d 1277 (La.App. 3rd Cir.1977).
In the instant case, plaintiff's uncontradicted testimony was that Taylor, driving an eighteen-wheel truck which was carrying a wide load, strayed into her lane of travel, forcing her from the road and onto the shoulder.
The trial judge determined that Taylor was negligent in allowing his vehicle and its wide load to stray into the oncoming lane of traffic forcing plaintiff onto the shoulder and that his negligence was a cause-in-fact of plaintiff's accident.
A review of the record leads us to the conclusion that the trial judge was not manifestly erroneous in his finding. See Sinitiere v. Lavergne, supra; Edwards v. State, Dept. of Transp. & Devel., supra.

Contributory Negligence of Plaintiff
A motorists's duty of reasonable care includes the duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 608 (La.1976). Further, a motorist has a duty to maintain a proper lookout for hazards which by the use of ordinary care and observation he should be able to see in time to avoid running into them. Southern Farm Bureau Casualty Ins. Co. v. Gay, 276 So.2d 893 (La.App. 1st Cir.1973). See also Sinitiere v. Lavergne, supra. However, a motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979).
In the case sub judice, plaintiff attempted to steer her vehicle to the right to extricate her tire from the rut in the shoulder and to avoid the Taylor vehicle in her lane of travel. While entering the curve, plaintiff was faced with an emergency situation (the eighteen-wheel truck carrying a wide load entered her lane of travel). Plaintiff is negligent only if she had knowledge of a defect, had a reasonable opportunity to avoid it, and did not do so. LeBlanc v. State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, supra; Thornhill v. Louisiana Dept. of Transp., Etc., 424 So.2d 331 (La.App. 1st Cir.1982).
Plaintiff traveled Highway 21 three times per week. She was familiar with the *132 road, but there is no evidence to suggest her familiarity with the particular shoulder and rut. Plaintiff admitted seeing the rut and realizing its size as she guided her car off the road to avoid the Taylor vehicle.
Plaintiff testified that once she had steered onto the shoulder, she observed the rut. Although she continued to try to veer to her right, she was not able to because her tire was restricted. Her testimony was that she made three attempts to steer to the right in order to avoid the Taylor vehicle, which was still drifting into her lane, and to extricate her tire from the rut. On her third attempt, the car went into a spin. The evidence does not indicate whether the tire left the rut before the spin or if the spin began when the tire was still in the rut. Plaintiff did testify, however, that she did not steer left to retake the roadway. Plaintiff justifiably steered her car to the shoulder to avoid the eighteen-wheel truck and to take advantage of the added safety of the shoulder. She saw it was not safe, but she had no reasonable opportunity to avoid the defect and, therefore, was not contributorily negligent.
The situation presented in the case sub judice is clearly distinguishable from the factual situation presented in Sinitiere v. Lavergne, supra. In Sinitiere, the driver, once off the road and on the shoulder, had enough time to establish control of his car and use caution in attempting to re-enter the roadway. Here, plaintiff left the road in an emergency in a dangerous curve. There was no attempt to re-enter the roadway. Her attempts to steer right, even if they were what sent her into the spin, were a continuation of her justifiable evasive maneuver. There was nothing negligent in this action. We, therefore, agree with the trial judge in his finding that plaintiff was not contributorily negligent.

DAMAGES
Plaintiff was awarded general damages of $95,000.00 for injuries arising out of this accident. DOTD was held responsible for 50% of this amount. An additional award for past and future medical expenses and expert witness fees totalling $9,441.94, was also made for which DOTD was responsible for one-half. Appellant argues the award is excessive. Plaintiff contends the award is insufficient.
The trier of fact is afforded broad discretion in making an award of general damages. LSA-C.C. art. 1934(3). Only when the record reveals a clear abuse of this discretion is an appellate court justified in disturbing a trial court award. Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979).
A review of the award made herein is complicated by the fact that it was an in globo award except for the awards for past and future medical expenses. As a result, there is no way of knowing the amount awarded by the trial court judge for each element of damage. Accordingly, in reviewing the award made, we must remain cognizant of the various items which may support the total award. Mullin v. Vessier, 400 So.2d 1192 (La.App. 1st Cir.1981).
Photographs displaying plaintiff's various bruises after the accident were introduced into evidence and showed bruises in the area of the back and right thigh. In addition to these visible injuries, plaintiff injured her right knee, neck, shoulders, right index finger, nose and chest. All of these injuries resolved within a relatively short period of time, with the exception of the knee and chest. The trial judge also found that the hump on plaintiff's nose was a result of it being broken in the accident.
Despite her escape from further serious injury or death as a result of this accident and her rapid recovery from the injuries, plaintiff was bedridden for three weeks after the accident, hospitalized for eleven days for chest pain, and had to drop out of x-ray technician school due to excessive absence and residual pain. Additionally, doctors testified that she may need to undergo surgery for her knee and may elect cosmetic surgery for her nose.
Plaintiff's permanent knee injury was diagnosed as beyond chondromalacia to traumatic arthritis. Plaintiff currently has a *133 5-10% disability in that knee, which would increase to 20% after surgery. Although surgery would leave greater anatomical disability, it would greatly relieve plaintiff's pain.
Plaintiff's chest injury is also permanent. It was diagnosed as sternochondritis or costochondritis: the tearing away of ribs from cartilage around the breastbone. The condition is painful and persistant and is aggravated by breathing, sneezing, coughing, etc.
A review of the testimony and evidence convinces us that the trial judge did not abuse his much discretion in awarding plaintiff the sum of $95,000.00, plus $9,441.94 for past and future medical expenses and expert witness fees. Consequently, we affirm his judgment. See Copeland v. La. Dept. of Transp. & Develop., 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 448 (La.1983).
Plaintiff further argues that the trial court erred in not awarding damages for post-traumatic injury syndrome. The trial court specifically found the evidence insufficient to support an award for this syndrome. The only testimony as to this condition came in the deposition of Dr. Richard Strobach, psychiatrist. He testified that plaintiff suffered from the syndrome as a result of the accident, which interferred with her ability to complete her school work. Within fourteen months after the accident, on plaintiff's second visit to Dr. Strobach, he found her able to cope with her school environment.
When evaluating depositions, rather than live testimony, we must determine the sufficiency and preponderance of the evidence. Since the only evidence to support plaintiff's claim for damages for post-traumatic injury syndrome was presented by deposition, the trial judge was in no better position to assess credibility than the appellate court. F & S Offshore v. Serv. Mach. & Shipbuilding, 430 So.2d 1167 (La.App. 1st Cir.1983); Hayes v. Commercial Union Assur. Co., 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La. 1985).
Our review of Dr. Strobach's deposition supports the trial judge's finding that plaintiff did not suffer from post-traumatic stress syndrome. Accordingly, we affirm the trial court's finding.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally against plaintiff and DOTD. Costs in the amount of $1,423.27 are assessed against DOTD.
AFFIRMED.
NOTES
[1] This particular curve, known to local residents as "dead man's curve," was identified by Robert Adams, District Traffic Operations Engineer for DOTD, as an "abnormal location" in 1979 and 1980. This means that the accident rate at that location was higher than average. In 1979, seven accidents occurred in this curve with four fatalities. In 1980, there were six accidents with one fatality.
[2] Although we will not discuss each assignment of error individually, the opinion adequately addresses all issues raised.
[3] See footnote 2.